STATE OF CONNECTICUT *v.* OSCAR L. ANDERSON
(AC 24331)

Dranginis, Flynn and Mihalakos, Js.

Argued October 18, 2004—officially released January 18, 2005

*Pamela S. Nagy*, special public defender, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with whom were *John A. Connelly*, state's attorney, and, on the brief, *Gail Hardy*, assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Oscar L. Anderson, appeals from the judgment of conviction, rendered after a trial to the jury, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (1).[1] On appeal, the defendant claims that (1) his conviction of risk of injury to a child should be reversed and remanded for a new trial because it was based on a general verdict and the allegations comprising two of the three bases for conviction were insufficient as a matter of law, (2) the court improperly admitted hearsay statements of the victim, (3) the medical exception to the hearsay rule should be modified in cases in which a child claims that she or he was sexually assaulted and (4) the court improperly instructed the jury by failing to inform it of the evidence it could consider with respect to the charge of risk of injury to a child. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In 1997, the defendant and the victim's mother met at their place of employment and became romantically

---

[1] The defendant was acquitted of a second count of sexual assault in the first degree in violation of § 53a-70 (a) (2).

involved.[2] Shortly thereafter, when the victim was seven years old, the defendant moved into the mother's household. The mother worked the second shift and was not at home when the victim returned from school. The defendant, who worked a different shift, was there. At first the victim and the defendant had a good relationship, but later the victim told people she did not like the defendant.

The defendant punished the victim. The defendant struck her face with his hand when he was angry because she had not done her homework correctly. She did not tell her mother about this because she was afraid of what the defendant might do. On one occasion, the defendant hit her so hard her nose bled. The defendant also compelled her to hold a book bag filled with tapes and clothes on a stick over her head for long periods of time. On another occasion, he made her kneel on grains of rice. Although the victim did not tell her mother about these events, she confided in her best friend. The friend's mother testified that she noticed behavioral changes in the victim beginning in 1998. The victim, who had been carefree, had become quiet and withdrawn. The victim's grades suffered, and she exhibited a poor attitude at school. After school one day, the victim was terrified to go home on the school bus. Her teacher and school principal conferred with her mother. The victim, however, had not told anyone other than her friend that she was afraid of the defendant.

The victim also testified that the defendant made her rub his back or his feet while he was wearing only his underwear. In addition, he called her into the bedroom and asked her to rub his private parts. One night she woke up and the defendant was attempting to put his

---

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom her identity may be ascertained. See General Statutes § 54-86e.

penis in her mouth. She reported this to her mother who told her that she must have been dreaming. The victim testified that the defendant had sexual intercourse with her by putting "his private into [her] butt." When she was nine and in the fourth grade, the defendant had intercourse with her almost "every other night or twice a week." The defendant forced the victim to have oral, anal and vaginal intercourse with him.

The victim did not tell her mother about the incidents of sexual abuse until shortly after a fire occurred in their home, the day after Thanksgiving, 2000. The victim was spending time with her grandmother who overheard her talking to herself. The grandmother insisted that the victim tell her what she was talking about. The victim told her grandmother of the defendant's sexual abuse. The grandmother informed the mother and immediately took the victim to the police station. The victim gave a statement to the police in which she related the defendant's sexual abuse. The police advised the victim's mother to take her to a hospital that specialized in assessing children who are victims of sexual abuse. The mother followed the advice of the police. The victim was examined by Judith Kanz, a certified pediatric nurse practitioner, who specializes in child forensic medical examinations.

The defendant testified that the victim did not like him because she felt that he was replacing her father and because he planned to marry her mother. He admitted that he disciplined the victim for not doing her homework or her chores. As punishment, he took away the victim's privileges or gave her "time outs." He also testified that he made the victim hold a stick on which an empty book bag was suspended for five minutes. The defendant denied that he had sexually assaulted the victim.

Following the jury's verdict, the defendant filed a motion for a new trial, which the court denied. The

defendant was given an effective sentence of eighteen years in prison, ten years of probation and special conditions of probation as a sex offender. The defendant appealed.

I

Because the defendant's first and last claims are interrelated, we will address them together. The defendant claims that the judgment of conviction of risk of injury to a child in violation of § 53-21 (a) (1), rendered pursuant to a general verdict, must be reversed because two of the factual bases argued by the prosecutor are insufficient as a matter of law, and the court improperly failed to tell the jury what evidence it properly could consider with respect to the count of risk of injury to a child.[3] The defendant failed to raise these claims at trial and now seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[4] Because we conclude that a constitutional violation did not clearly exist and that the defendant was not clearly deprived of a fair trial, he cannot prevail on either of these claims.

The following facts are relevant to our resolution of the defendant's claims. The amended substitute information alleged in count two that the defendant "did

---

[3] As an alternative basis for reversal of his conviction, the defendant claims that § 53a-21 (a) (1), as applied to the two fact patterns that are legally insufficient bases for conviction, is unconstitutionally vague. Although we need not reach this claim, we note that this is not the first time a vagueness claim has been raised with respect to § 53a-21 (a) (1). Our Supreme Court has held that the statute is not unconstitutionally vague because authoritative judicial gloss circumscribed "the type of physical harm prohibited by § 53-21 to instances of deliberate, blatant abuse." *State* v. *Schriver*, 207 Conn. 456, 466, 542 A.2d 686 (1988). "All that is absolutely known is that the irreducible minimum of any prosecution under the second part of § 53-21 is an act directly perpetrated on the person of a minor." Id., 467.

[4] We note that the defendant did not seek a bill of particulars, did not submit a request to charge, did not object to the proposed charge provided by the court, did not object to the charge as given and did not submit interrogatories to the jury.

commit the crime of risk of injury to a [child], in violation of . . . General Statutes § 53-21 (a) (1), in that on divers dates between January 1, 1998, and October 31, 2000 . . . the said [defendant] *did an act* likely to impair the health of a child who was under the age of sixteen."[5] (Emphasis added.) During the state's final argument to the jury, the prosecutor argued that the state had presented evidence that the defendant struck the victim's face causing her nose to bleed, made her kneel on grains of rice and, at other times, made her hold a book bag over her head for long periods of time.

With respect to the count of risk of injury to a child, the court instructed the jury as follows: "In count two, the defendant is charged with the crime of risk of injury to a [child] in violation of § 53-21 (a) (1) of the General Statutes. The pertinent parts of that statute on which the defendant has been charged are as follows. Any person who does an act likely to impair the health of any child under the age of sixteen years shall be punished.

"Therefore, with respect to this offense to find the defendant guilty, the state must prove beyond a reason-

[5] General Statutes (Rev. to 1997) § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child, or (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child, shall be guilty of a Class C felony."

The defendant was charged with crimes that allegedly occurred from January, 1998, through October, 2000. The codifications of § 53-21 applicable to that period of time are the revisions to 1997 and 1999 and the amendments to those revisions by Public Acts 1997, No. 97-147, § 1, and Public Acts 2000, No. 00-207, § 6. Public Acts 2000, No. 00-207, § 6, designated the then existing language of § 53-21 as subsection (a) and added subsection (b). The amendments to § 53-21 since 1997 are not relevant for purposes of this appeal. For ease of reference, we refer in this opinion to the revision to 2001, which codified the 2000 amendments.

able doubt the following elements as contained in the information. One, that at the time of the incident, the alleged victim was under the age of sixteen years; two, that the defendant *committed an act* that was likely to impair the health of a child; and, three, that the defendant had the general intent to perform such an act. The conduct to be punished must involve a child under the age of sixteen.

"The statute next requires that the defendant *did an act* likely to impair the health of the child. Health is defined as the state of being hale, sound or whole in mind or soul, well-being. Freedom from pain or sickness. To establish that the defendant committed an act likely to impair the health of a [child], the state must prove beyond a reasonable doubt that the *defendant committed blatant physical abuse* that endangered the child's physical well-being. Finally, the state must prove beyond a reasonable doubt that the defendant had the general intent to perform the act." (Emphasis added.) Save for his claim that the court did not marshal the evidence with respect to this charge, the defendant does not claim that the court's instruction on the law was improper.

At oral argument before us, the defendant conceded that striking the victim and causing her nose to bleed is legally sufficient evidence of risk of injury to a child. He claims, however, that compelling a child to kneel on grains of rice or to hold a book bag in the air do not, as a matter of law, constitute risk of injury to a child as they are not blatant acts of abuse or even acts perpetrated by him. He claims therefore that it was improper for the court to submit the evidence concerning the incidents with the rice and the book bag to the jury. Furthermore, he argues that because the jury rendered a general verdict, it is not possible to know the factual basis on which the jury convicted him of risk of injury to a child, including whether the jury

considered his acts of sexual abuse, which he argues, without legal citation, the jury could not consider. In support of his claim for reversal, the defendant relies on *United States* v. *Garcia*, 992 F.2d 409 (2d Cir. 1993).

### A

We disagree with the defendant's claim that he was convicted on the basis of insufficient evidence as a matter of law and that *Garcia* supports his claim.[6] "[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." (Internal quotation marks omitted.) *Griffin* v. *United States*, 502 U.S. 46, 56, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991), citing *Turner* v. *United States*, 396 U.S. 398, 420, 90 S. Ct. 642, 24 L. Ed. 2d 610 (1970). "It was settled law in England before the Declaration of Independence, and in this country long afterwards, that a general verdict was valid so long as it was legally supportable on one of the submitted

---

[6] The United States Supreme Court made the following observation in *Griffin* v. *United States*, 502 U.S. 46, 58–59, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991): "Finally, petitioner asserts that the distinction between legal error (*Yates* [v. *United States*, 354 U.S. 298, 77 S. Ct. 1064, 1 L. Ed. 2d 1356 (1957)]) and insufficiency of proof (*Turner* [v. *United States*, 396 U.S. 398, 90 S. Ct. 642, 24 L. Ed. 2d 610 (1970)]) is illusory, since *judgments that are not supported by the requisite minimum of proof are invalid as a matter of law*—and indeed, in the criminal law field at least, are *constitutionally required* to be set aside. *See Jackson* v. *Virginia*, 443 U.S. 307, 319 [99 S. Ct. 2781, 61 L. Ed. 2d 560] (1979). Insufficiency of proof, in other words, *is* legal error. This represents a purely semantical dispute. In one sense 'legal error' includes inadequacy of evidence—namely when the phrase is used as a term of art to designate those mistakes that it is the business of judges (in jury cases) and of appellate courts to identify and correct. In this sense 'legal error' occurs when a jury, properly instructed as to the law, convicts on the basis of evidence that no reasonable person could regard as sufficient. But in another sense—a more natural and less artful sense—the term 'legal error' means a mistake about the law, as opposed to a mistake concerning the weight or the factual import of the evidence. The answer to petitioner's objection is simply that we are using 'legal error' in the latter sense." (Emphasis in original.)

grounds—even though that gave no assurance that a valid ground, rather than an invalid one, was actually the basis for the jury's action." (Internal quotation marks omitted.) *State* v. *Chapman,* 227 Conn. 616, 625 n.6, 632 A.2d 674 (1993), citing *Griffin* v. *United States,* supra, 502 U.S. 469. On reargument, *Chapman* was affirmed. *State* v. *Chapman,* 229 Conn. 529, 643 A.2d 1213 (1994).

In *Garcia,* the problem lay in the jury instruction, not the evidence. *United States* v. *Garcia,* supra, 992 F.2d 414 (court's failure to give instruction on quid pro quo was error).[7] That is not the circumstance before us now. In this case, the jury had to determine whether the state presented evidence that the defendant committed blatant physical abuse that endangered the victim's physical health.[8] We need not decide whether forcing a child to kneel on grains of rice or to hold a book bag over her head are acts prohibited by § 53-21 (a) (1). As the defendant concedes, striking a child thereby causing a bloody nose is sufficient evidence of risk of injury to a child.[9] There was at least one legal theory under which

---

[7] The District Court in *Garcia* charged three bases for convicting the defendants of affecting interstate commerce by means of extortion, a violation of the Hobbs Act, 18 U.S.C. § 1951 (1988). *United States* v. *Garcia,* supra, 992 F.2d 412–13. "We thus have a case in which the jury was given three disjunctive bases for conviction, one of which was legally sufficient and two of which were legally insufficient. We cannot tell the basis upon which the jury based its conviction of Garcia. . . .

"In *Griffin* v. *United States,* [supra, 502 U.S. 46], the Supreme Court held that where a jury convicted a defendant on a double object conspiracy charge, the court of appeals properly affirmed a general guilty verdict where the evidence was sufficient to establish one of those objectives, but insufficient to establish the other." *United States* v. *Garcia,* supra, 992 F.2d 415.

[8] The defendant stipulated that the victim was younger than sixteen years of age.

[9] We do not know the basis on which the jury convicted the defendant of risk of injury to a child. We note, however, that the jury may well have convicted the defendant of risk of injury to a child on the basis of his acts of sexual assault. See *State* v. *Madore,* 45 Conn. App. 512, 515–17, 696 A.2d 1293 (1997); see also part IV.

the jury could have convicted the defendant if the jurors found beyond a reasonable doubt that evidence presented by the state met the elements of the crime. "[A] factual insufficiency regarding one statutory basis, which is accompanied by a general verdict of guilty that also covers another, factually supported basis, is not a federal due process violation . . . . Jurors are generally well equipped to analyze the evidence, and are in a position to be able to evaluate the testimony presented and to assess whether the evidence supported the charged theory." (Citations omitted; internal quotation marks omitted.) *State* v. *Lopes*, 78 Conn. App. 264, 273, 826 A.2d 1238, cert. denied, 266 Conn. 902, 832 A.2d 66 (2003).

For these reasons, the defendant's claim that his conviction for risk of injury to a child rendered pursuant to a general verdict should be reversed must fail. Had the defendant wanted to limit the factual basis on which the jury rendered its verdict, he could have requested that the court charge out the legally insufficient evidence or submitted interrogatories to the jury. See *Griffin* v. *United States*, supra, 502 U.S. 61 (Blackmun, J., concurring).

B

The defendant claims that it was improper for the court to fail to instruct the jury as to what evidence it could consider with respect to the count of risk of injury to a child.[10] The defendant also claims that the instruction was wanting because the court did not inform the jury that to convict the defendant, it had to find beyond a reasonable doubt that he committed an

---

[10] The defendant correctly notes that both the prosecutor and defense counsel mentioned only the incidents concerning the grains of rice, book bag and bloody nose during their final arguments concerning the risk of injury to a child count. The court instructed the jury that it was to follow the law as the court instructed.

act directly perpetrated on the victim. See *State* v. *Schriver*, supra, 207 Conn. 467; *State* v. *Robert H.*, 71 Conn. App. 289, 296, 802 A.2d 152, cert. granted on other grounds, 262 Conn. 913, 811 A.2d 1294 (2002).[11] We are not persuaded.

The following portions of the court's instructions to the jury are relevant to our analysis, in addition to the portions of the charge cited in part I. "Ladies and gentlemen, you have heard the evidence presented in this case. It is now my duty to instruct you as to the law that you must apply to the facts in this case. I will not make any substantial comments on the evidence. I will simply explain to you the rules of law as they apply to this case. . . .

"It is exclusively the function of the court to state the rules of law that govern the case with instructions as to how you are to apply them. It is your obligation to accept the law as I state it. You must follow all of my instructions and not single out some and ignore others. They are equally important. If by chance you have a different idea of what the law is or should be, you must disregard your notions entirely and apply the law exactly as I give it to you. *If the law as I give it to you differs in any way from the claims of law made by counsel, dismiss from your minds what counsel*

---

[11] We note that the court's instruction was in keeping with defense counsel's argument to the jury. See footnote 10. In his brief on appeal, however, the defendant claims that the court should have instructed the jury that the act perpetrated by the defendant had to be perpetrated directly on the child. This court often has said that a party cannot choose one strategy at trial and seek to overturn an adverse result by taking a different tack on appeal. *State* v. *Davis*, 76 Conn. App. 653, 662, 820 A.2d 1122 (2003).

Nonetheless, this court previously addressed a similar challenge to an instruction on the risk of injury to a child in *State* v. *Peters*, 40 Conn. App. 805, 823, 673 A.2d 1158, cert. denied, 237 Conn. 925, 677 A.2d 949 (1996) (jury charge not improper for failure to recite talismanic words). Here, the court instructed the jury that it had to find beyond a reasonable doubt that the defendant committed *"blatant physical abuse."* (Emphasis added.) See part I A.

*have said to the extent that it differs from what I tell you.* You are the sole judges of the facts. It is your duty to find the facts. You are to recollect and weigh the evidence and form your own conclusions as to what the ultimate facts are."[12] (Emphasis added.)

The court continued: "Now, let me turn to a discussion of the evidence. The evidence from which you are to decide what the facts are consists of, one, the sworn testimony of witnesses, both on direct and cross-examination, regardless of who called the witness; two, stipulations; and, three, the exhibits that have been received

---

[12] With respect to the second count of the information, risk of injury to a child, the prosecutor stated in its closing argument: "A portion of the definition includes the impairment of a physical condition or pain. [The victim] from that stand told you how the defendant made her kneel on rice. She told you how he made her hold the stick above her shoulders while he placed a book bag on one end of the stick and she was required to hold that stick and was filled with the defendant's items as a punishment to her. She didn't want to hold the stick. She told you that. She complied with his demand. She complied with his sexual demands because she didn't want to be punished any longer."

Defense counsel responded to that portion of the state's argument, stating: "There are two incidents of discipline that have gone unchanged here. Excuse me, again. One, [the victim] testified that she was made to kneel in rice while she was wearing pants. In the second, she talked about holding a stick over her head and that there was a book bag hanging from containing clothing and tapes. [The court] is going to read you an instruction on what is risk of injury to a minor. That instruction will include this language. To establish that the defendant committed an act likely to impair the health of a minor, the state must prove beyond a reasonable doubt that the defendant committed blatant physical abuse that endangered the child's physical well being. You need to decide if those incidents rise to that level."

On rebuttal, the prosecutor argued: "[The victim] took the stand and told you what she recalls about these incidents. She told you, her mother told you about an incident involving a bloody nose. The mother left, came back from the store to find [the victim] crying, to find [the victim's] nose bloody. Now, she told you that [the victim] wasn't prone to bleedy noses or bloody nose. . . . [The victim] told you that the defendant would strike her in the face. You have an adult male striking a child in the face to the extent that that child's nose is bleeding, that that child is crying. You have an adult male forcing an eight year old child, nine year old child to stand with a pole, with a book bag with his items contained within that bag for punishment. You impose punishments for a reason, to inflict pain."

into evidence. In reaching your verdict, you should consider all the testimony and exhibits received into evidence. *Certain things are not evidence and you may not consider them in deciding what the facts are. These include, arguments and statements by the lawyers. The lawyers are not witnesses. What they have said in their closing arguments is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.*" (Emphasis added.)

The court also instructed the jury: "[Y]ou will have [the information] with you at the time of deliberation. As you've already been told, the information is merely the formal manner of accusing a person of a crime in order to bring him to trial. You must not consider the information as any evidence whatsoever of the guilt of the defendant, or draw any inference of guilt because he has been charged with a crime.

\* \* \*

"As indicated in the state's written information, a copy of which you will have with you in the jury room, the state has charged the defendant with committing three separate crimes. Each one is designated in a separate count of the information. You must consider each count separately. When you return to the courtroom, you will be asked whether the defendant is guilty or not guilty as charged in each of these counts. Your verdict must be unanimous . . . ."

We are guided by the long-recognized standard of review with respect to a claim of an unconstitutional jury instruction. "In reviewing a constitutional challenge to the trial court's instructions, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . The test is whether the charge as a whole presents

the case to the jury so that no injustice will result. . . . We will reverse a conviction only if, in the context of the whole, there is a reasonable possibility that the jury was misled in reaching its verdict. . . .

"A jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present." (Citations omitted; internal quotation marks omitted.) *State* v. *Lemoine*, 233 Conn. 502, 509, 659 A.2d 1194 (1995). "The primary purpose of the charge is to assist the jury in applying the law correctly to the facts which they might find to be established." (Internal quotation marks omitted.) Id., 510.

The defendant claims that the court's instruction was unconstitutional because the court did not marshal the evidence. "It has long been established that [i]n properly instructing the jury it *may or may not* be necessary for the court to recall the attention of the jury to the evidence and to the facts which the State and the accused respectively claim to have established, or to comment upon the evidence or express an opinion as to its weight, or as to what verdict would be proper if the jury should find certain facts to be proved. The charge should be so framed that the jury may clearly understand the matters which are submitted to [it]. . . . It is within the province, and may be within the duty, of the trial judge to not only call attention to the evidence adduced, but to state to the jury in the charge his own opinion of the nature, bearing and force of such evidence. . . . It is not necessarily error to omit *all* comment upon the bearing and weight of evidence; and generally the extent to which the court should discuss the evidence in submitting a case to the jury is, so long as in criminal cases the jury [is] not directed how to find [its] verdict, *within the discretion of the trial judge.* . . .

"In reviewing whether the trial court *must* comment on any evidence that has been presented, we examine not only the entire jury charge, but also the presentation of the issues to the jury by counsel in the context of the trial. Within constitutional limitations concerning trial by jury, the nature and extent of the trial court's comments on the evidence must largely depend on the facts involved in a particular case and the manner in which it has been tried. . . . The *wide discretion* a trial court has in its comments on the evidence may not require it to discuss particular items of testimony, particularly where issues were clearly delineated during the trial, where the arguments of counsel fairly presented the case and where there was no request to charge. . . . In a case where the trial court's charge contained no review of the evidence, we stated that [t]he issues were narrow, and the court made sufficient reference to them and to the claims of the parties adequately to guide the jury in the application of the principles of law to the facts involved." (Citations omitted; emphases in original; internal quotation marks omitted.) Id., 510–12.

We conclude that the trial court did not abuse its wide discretion in commenting on the evidence in the instruction at issue here. We first note that the court properly instructed the jury on the elements of the crime of risk of injury to a child pursuant to § 53-21 (a) (1). Second, the court read the second count of the information that alleged that the defendant *did an act* likely to impair the health of a child younger than sixteen years of age. It also admonished the jury to follow the law as the court instructed and not to follow the law as represented by counsel during closing arguments. It informed the jury that the arguments of counsel were not evidence and that the jury was to decide the facts of the case on the basis of the evidence.

It is well known that a jury is presumed to follow the court's instructions in the absence of clear evidence to the contrary. *State* v. *Vargas*, 80 Conn. App. 454, 468, 835 A.2d 503 (2003), cert. denied, 267 Conn. 913, 840 A.2d 1175 (2004). As the United States Supreme Court has stated, "[J]urors are well equipped to analyze the evidence . . . ." *Griffin* v. *United States*, supra, 502 U.S. 59. We are confident that the court's clear instruction on the elements of risk of injury to a child and the jury's proven talent of sorting through the evidence yielded a verdict on the basis of evidence that demonstrated that the defendant committed blatant physical abuse that endangered the victim's physical well-being.

As to the defendant's suggestion that the jury improperly may have considered the evidence of the defendant's sexual abuse of the victim, neither he nor the state has provided a legal explanation, in view of the information and the evidence, as to why it would be improper for the jury to consider such evidence. Convictions for both sexual assault and risk of injury to a child do not violate the constitutional prohibition against double jeopardy, as each crime requires the state to prove an element that the other does not. See *State* v. *Ellison*, 79 Conn. App. 591, 601–602, 830 A.2d 812, cert. denied, 267 Conn. 901, 838 A.2d 211 (2003), citing *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). Furthermore, there was evidence before the jury that the defendant had sexually assaulted the victim on more than one occasion, which were acts directly perpetrated on the victim.

If, in fact, the court's instruction was inadequate as to the count of risk of injury to a child, we conclude that the error was harmless. The same set of facts that constitute the crime of sexual assault in the first degree may satisfy the crime of risk of injury to a child. See *State* v. *Cansler*, 54 Conn. App. 819, 835–40, 738 A.2d 1095 (1999). We do not know whether the jury convicted

the defendant of risk of injury to a child on the basis of his having given the victim a bloody nose or his sexually assaulting her or both. The fact that the jury convicted the defendant of sexual assault in the first degree, however, assures us that, as a matter of law, there was sufficient evidence found by the jury upon which the defendant could have been convicted of risk of injury to a child.

For all of the foregoing reasons, the defendant's claims that his conviction of risk of injury to a child should be reversed must fail.

## II

The defendant's second claim is that the court improperly admitted hearsay statements attributed to the victim. The defendant has argued that the court improperly expanded the medical exception to the hearsay rule by permitting Kanz to testify as to vaginal penetration. The defendant argues that the testimony was improper because the victim saw Kanz at the suggestion of the police, not as a link in the chain of medical care. We disagree.

The following facts are relevant to our resolution of this claim. The victim testified that the defendant put his penis in her mouth, told her to have sexual intercourse with him and put his penis in her "butt."[13] The

---

[13] The victim testified in part:

"Q. Now, you mentioned acts of [the defendant] putting his thing in your mouth. You mentioned him telling you to rub his penis. Do you remember any other acts of a sexual nature?

"A. Yes.

"Q. Can you describe them?

"A. He would like call me into my mom's room. He would like tell me to pull my clothes down. He told me to do sexual intercourse.

＊ ＊ ＊

"Q. What do you mean by that?

"A. Like, he would have sex, like put his private into my butt.

"Q. Into your butt?

"A. Yes."

day after the victim testified, the defendant filed a motion in limine to preclude Kanz from testifying about the results of her vaginal examination of the victim. The defendant argued that during her testimony, the victim made no mention of the defendant's having touched her vagina and, in fact, defined sexual intercourse as putting his private in her "butt." Because the victim had never testified about vaginal intercourse, the defendant continued, Kanz should not be permitted to testify about her examination of the victim's vagina. The court denied the motion in limine, concluding that the defendant's interpretation of the victim's testimony was too limited in view of the manner in which she discussed sexual intercourse throughout her testimony.

The state then sought to clarify the purpose of Kanz' testimony. The prosecutor stated Kanz' testimony was being offered for constancy of accusation and also as that of a medical care provider. The defendant objected, arguing that Kanz did not examine the victim for medical purposes but at the suggestion of the police. The court reserved its decision on the motion, pending a proffer of Kanz' testimony. After Kanz testified as to her educational background and experience, the court ruled that she was qualified to testify as an expert in the field of forensic medical examinations. Kanz receives frequent referrals from police departments and the department of children and families to examine children who are alleged to have been sexually abused. She begins an assessment by talking to children to determine the type of physical examination she needs to perform, what areas of the body to examine and whether she should administer tests for sexually transmitted, blood or serum borne diseases. In addition, children who have been abused often are worried that something bad has happened to their bodies. They need to be reassured that their bodies are healthy and can function properly, and that they can have normal,

healthy lives. Kanz' purpose, as an expert, is to accomplish all of these things for the children she examines. The defendant objected to Kanz' testifying as to what the victim told her the defendant had done to her. The court overruled the objection concluding that the victim saw Kanz for treatment purposes.

On the basis of the victim's description of the defendant's sexual contact, Kanz conducted a physical examination, including anal and vaginal examinations. Kanz' findings on examination were consistent with recurrent vaginal penetration. The results of the victim's anal examination were within normal limits. Kanz did not recommend further treatment for the victim as her injuries had resolved.

During cross-examination, defense counsel asked Kanz whether her examination of the victim was for investigative purposes. Kanz repeatedly responded that her services are not for the purpose of gathering information or investigation, but to conduct the appropriate medical examination so that the victim of sexual assault gets whatever treatment is necessary.[14] On redirect examination, Kanz testified that the victim had reported to her in a consistent manner that the defendant had performed acts that involved penile oral penetration, penile vaginal penetration, digital vaginal penetration and penile anal penetration. When the state rested, the court instructed the jury on the purpose of constancy of accusation testimony.[15]

We are mindful of the well established standard of review for evidentiary claims. "The trial court has wide discretion in its rulings on evidence and its rulings will

[14] Kanz generally sends a copy of her report to the referring agency if she has proper authorization from the patient or parent. The victim's mother signed an authorization for Kanz to send her report to the police.

[15] In addition to Kanz, Anthony Rickevicius, a police detective, testified as to the victim's report of sexual abuse.

be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law. . . . And [the exercise of such discretion] requires a knowledge and understanding of the material circumstances surrounding the matter . . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Aaron L.*, 79 Conn. App. 397, 401–402, 830 A.2d 776, cert. granted on other grounds, 266 Conn. 924, 835 A.2d 474 (2003).

On appeal, the defendant claims that it was improper for the court to permit Kanz to testify about the victim's statements regarding the defendant's sexual abuse because it was hearsay. He argues that the statements were not admissible as constancy of accusation testimony because the victim saw Kanz after she had reported the abuse to the police. The state, however, argues that Kanz' testimony was admissible pursuant to the medical treatment exception to the hearsay rule. The defendant counters that because the police referred the victim to Kanz and because Kanz sent a copy of her report to the police, the purpose of her examination was investigative not medical. To support his argument, the defendant also points to the testimony of the victim and her mother regarding an examination at the hospital.[16] Their testimony regarding the time of the examina-

[16] The victim testified in part:

"Q. Did you report these incidents to anyone?

"A. Yes.

"Q. Who[m] did you report those incidents to?

"A. I went to the police station. I reported them. This guy, he printed them out on the computer. Then, like the next day, I went to the hospital. I reported to the doctor.

\* \* \*

"Q. And you said you went to the hospital?

"A. Yes.

"Q. What did you go to the hospital for?

tion is inconsistent. Kanz testified from memory, rather than from her notes, that she thought she examined the victim on December 11, 2000.[17]

This court frequently has dealt with evidentiary claims regarding the statements of victims of sexual abuse who seek or for whom others seek medical treatment or advice. See, e.g., *State* v. *Aaron L.*, supra, 79 Conn. App. 415–421; *Doe* v. *Thames Valley Council for Community Action, Inc.*, 69 Conn. App. 850, 853–877, 797 A.2d 1146, cert. denied, 261 Conn. 906, 804 A.2d 212 (2002); *State* v. *Cruz*, 56 Conn. App. 763, 766–771, 746 A.2d 196 (2000), aff'd, 260 Conn. 1, 792 A.2d 823 (2002); *State* v. *Dollinger*, 20 Conn. App. 530, 534–37, 568 A.2d 1058, cert. denied, 215 Conn. 805, 574 A.2d 220 (1990); *State* v. *Maldonado*, 13 Conn. App. 368, 370–76, 536 A.2d 600, cert. denied, 207 Conn. 808, 541 A.2d 1239 (1988). Furthermore, the medical exception

---

"A. So the doctor could check me out to see if I have any bruises.

"Q. Can you describe the exam that you had? Had you ever had an exam like that before?

"A. No.

"Q. How did it feel?

"A. I didn't like it. I was scared.

"Q. But you had the exam?

"A. Yes."

The victim's mother testified, in part, on cross-examination:

"Q. Immediately after the police station you went to [the hospital]?

"A. I believe so. Yes.

"Q. And about how long were you at [the hospital] that day?

"A. For maybe two hours.

"Q. And [the victim] was examined at the hospital?

"A. Yes.

"Q. And you were with her while that examination took place?

"A: Yes.

"Q. Do you remember who that examination was by? Who was performing the examination?

"A. I don't remember his name.

"Q. Man or woman?

"A. Man."

[17] Neither Kanz' report nor the victim's medical records were put into evidence.

to the hearsay rule has been codified in our rules of evidence. Conn. Code Evid. § 8-3 (5). Consequently, we do not write on a clean page.

" 'Hearsay' means a statement, other than one made by the declarant while testifying at the proceeding, offered in evidence to establish the truth of the matter asserted." Conn. Code Evid. § 8-1 (3). "Hearsay is inadmissible, except as provided in the Code, the General Statutes or the Practice Book." Id., § 8-2. Section 8-3 of the Connecticut Code of Evidence provides in relevant part: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness . . . (5) . . . A statement made for purposes of obtaining medical treatment or advice pertaining thereto and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to the medical treatment or advice."

"The hearsay rule . . . is premised on the theory that out-of-court statements are subject to particular hazards. The declarant might be lying; he might have misperceived the events which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener. And the ways in which these dangers are minimized for in-court statements—the oath, the witness' awareness of the gravity of the proceedings, the jury's ability to observe the witness' demeanor, and, most importantly, the right of the opponent to cross-examine—are generally absent for things said out of court.

"Nonetheless, the . . . [r]ules of [e]vidence also recognize that some kinds of out-of-court statements are less subject to these hearsay dangers, and therefore except them from the general rule that hearsay is inadmissible. . . . One such category covers statements

made by a patient to a physician for the purpose of obtaining medical treatment. . . .

"The rationale underlying the medical treatment exception to the hearsay rule is that the patient's desire to recover his health . . . will restrain him from giving inaccurate statements to a physician employed to advise or treat him." (Citations omitted; internal quotation marks omitted.) *State* v. *Cruz*, 260 Conn. 1, 6–7, 792 A.2d 823 (2002). "[T]estimony pertaining to the identity of the defendant and the nature of the sexual assault [are] wholly relevant and pertinent to proper diagnosis and treatment of the resulting physical and psychological injuries of sexual assault. . . . [I]n any sexual assault, the identity of the perpetrator undoubtedly is relevant to the physician to facilitate the treatment of psychological and physical injuries." (Citations omitted; internal quotation marks omitted.) Id., 15.

Our Supreme Court has held that "[t]he rationale for excluding from the hearsay rule statements that a patient makes to a physician in furtherance of obtaining medical treatment applies with equal force to such statements made to other individuals within the chain of medical care. In each case, [there is a presumption] that such statements are inherently reliable because the patient has an incentive to tell the truth in order to obtain a proper medical diagnosis and treatment." Id., 10.

In the case before us, the defendant does not claim that the court improperly recognized Kanz as an expert in the care and treatment of pediatric victims of sexual abuse.[18] His claim is premised on his construction of

[18] Kanz testified that she is a certified pediatric nurse practitioner and has the title of director of the child abuse assessment center where she is employed. She earned a bachelor of science degree in nursing at Fitchburg State College and a master of science degree in nursing from Yale University. She has pursued further education and training at Yale University and Saint Francis Medical Center to become a forensic medical examiner for child sexual abuse. She receives referrals from a variety of sources, including

the evidence that the victim was examined for bruises at a hospital soon after she gave her statement to the police and saw Kanz approximately a week to ten days later because the police suggested that Kanz examine the victim. We need not determine how many times the victim was examined by health care providers. The key on which the issue of admissibility of the victim's statements turns is the purpose of the examination. The defendant claims the purpose of the examination was investigatory, but the court concluded that it was for treatment. We agree with the court.

First, and most importantly, the victim understood that she went to the hospital to be examined for injuries that she may have sustained. Her statements to Kanz meet the reliability criteria for the medical treatment exception to the hearsay rule. In addition, Kanz gave extensive foundation testimony about the nature of her employment and the purpose of the child abuse assessment center. The center receives referrals from numerous sources and, in this case, Kanz thought that the victim had been referred by the department of children and families. Regardless of her recollection of the source of the victim's referral, Kanz' testimony regarding the manner in which she performs an assessment addresses a standard.

Kanz testified in relevant part: "Our approach is to see the patient first. If the patient is what we call verbal age, can speak, I take the patient into a room. I do an interview, an independent interview to begin for two main reasons: to put the child at ease and also to guide my exam. What the child tells me lets me know the type of exam I have to do [and] the type of laboratory test I may have to do. . . .

police departments, the department of children and families and physicians. Kanz, again testifying from memory, was under the impression that the victim had been referred to her by the department of children and families.

* * *

"The information that the children, and specifically in this case [the victim], tend to give in the interview lets me know the extent of the exam I have to do. There are children who are referred to me for questions that their pediatricians had on exam. Was this normal? Was this not normal? There are times children may state things that are misunderstood or misconstrued by other people and they end up with me for an exam. This is a detailed exam for which I wouldn't expect a child to go through unless they had to. So I speak with the child in order to determine that this type of exam is necessary and then beyond that to determine what type exactly of exam is necessary. What . . . area of the body was touched. What areas may be included in this exam, and also to determine if there needs to be testing for STDs, which are sexually transmitted diseases."

On cross-examination, defense counsel specifically asked Kanz whether her examination was for investigatory purposes. Kanz responded: "I'm not there for an investigative purpose. I am there for what we call consultation purpose. Specifically, to determine if the children have injuries that need medical attention [and] [t]o then follow up." The defendant claims that the trial court improperly admitted the evidence of the victim's statements to Kanz under the medical exception to the hearsay rule. To the extent that the court made its decision on credibility grounds, we yield, as we must, to the court's assessment. See *State* v. *Rollins*, 51 Conn. App. 478, 485, 723 A.2d 817 (1999).

We therefore conclude that, on the basis of our review of the evidence, particularly the testimony of the victim and Kanz, the court did not abuse its discretion in admitting the victim's statements to Kanz under the medical exception to the hearsay rule.

## III

The defendant's third claim is that this court should exercise its supervisory powers to modify the rules of evidence regarding the medical exception to the hearsay rule in sexual assault cases involving children. "Appellate courts possess an inherent supervisory authority over the administration of justice. . . . [O]ur supervisory powers are invoked only in rare circumstances where [the] traditional protections are inadequate to ensure the fair and just administration of the courts . . . ." (Internal quotation marks omitted.) *State* v. *Ashe*, 74 Conn. App. 511, 526, 812 A.2d 194, cert. denied, 262 Conn. 949, 817 A.2d 108 (2003). We decline the defendant's request to invoke our supervisory powers over the administration of justice in this case.

The judgment is affirmed.

In this opinion the other judges concurred.