# STATE OF CONNECTICUT *v.* MARTIN M.[1]
## (AC 27807)

Beach, Robinson and Pellegrino, Js.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued March 9—officially released June 16, 2009

*James B. Streeto*, assistant public defender, for the appellant (defendant).

*Melissa L. Streeto*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Robin Lipsky*, former senior assistant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Martin M., appeals from the judgment of conviction, rendered after a jury trial, of two counts of risk of injury to a child in violation of General Statutes § 53-21, one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and one count of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B). On appeal, the defendant first claims that the kidnapping statute is unconstitutionally vague as applied to him.

He also claims that the trial court (1) improperly failed to disclose fully all relevant material for cross-examination following an in camera review of certain confidential records, (2) allowed hearsay testimony of a nurse practitioner under the medical testimony exception to the hearsay rule and (3) improperly considered the recidivism rate of sexual predators in sentencing the defendant in violation of his constitutional rights. We affirm the defendant's conviction of the two counts of risk of injury to a child and the one count of sexual assault in the first degree. We reverse, however, the defendant's conviction of kidnapping in the first degree and remand the case for a new trial on that charge in keeping with the recent Supreme Court judgments in *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008), and *State* v. *DeJesus*, 288 Conn. 418, 953 A.2d 45 (2008).

The jury reasonably could have found the following facts. Between October, 1998, and August, 2004, the defendant repeatedly sexually assaulted the victim. The sexual assaults took place in the home that the victim lived in with the defendant, his mother and his sister. The sexual assaults first started when the victim was approximately five years old. The victim would wake up to find that the defendant was on top of him having anal intercourse. This occurred at least once a week. When the victim would wake up to find the defendant sexually assaulting him, he would try to get away from the defendant. When the victim tried to get away, the defendant would grab him by the arms, hold his face down on the mattress and lie on top of him. When the victim tried to tell the defendant to stop because it hurt, the defendant would reply, "Shut up."

In January, 2004, the victim, at his request, went to live with his grandparents. He subsequently began seeing a counselor once or twice a week. One afternoon, after viewing an article regarding sexual abuse, the victim became upset, and his grandmother informed his

counselor. The counselor asked the victim about his reaction, and the victim stated to the counselor that the defendant had sexually abused him. The counselor notified the department of children and families, which, in turn, notified the police department. The police department referred the victim to Judith Kanz, a forensic nurse practitioner, who interviewed and examined the victim. Kanz testified at trial as to the statements the victim made to her during her interview of him, as well as the results of her examination of him. After a trial to the jury, the jury found the defendant guilty of two counts of risk of injury to a child, one count of sexual assault in the first degree and one count of kidnapping in the first degree. The defendant was sentenced to twenty years incarceration for sexual assault in the first degree, twenty years incarceration for kidnapping in the first degree and ten years incarceration for each count of risk of injury to a child. The terms of incarceration for the sexual assault and kidnapping were to be served concurrently and the terms of incarceration for each count of risk of injury were to be served concurrently to each other but consecutively to the sexual assault and kidnapping. The total effective sentence was thirty years incarceration. This appeal followed. Additional facts will be set forth as necessary.

I

Since the date of the defendant's conviction of kidnapping in the first degree, our Supreme Court has adopted a change in its previous interpretation of § 53a-92. See *State* v. *DeJesus*, supra, 288 Conn. 418; *State* v. *Sanseverino*, 287 Conn. 608, 949 A.2d 1156 (2008), overruled in part by *State* v. *DeJesus*, 288 Conn. 418, 437, 953 A.2d 45 (2008); *State* v. *Salamon*, supra, 287 Conn. 509. On the basis of this change in precedent relative to his kidnapping conviction, the defendant now argues, and the state agrees, that the conviction on that charge should be reversed. We agree.

In *State* v. *Salamon*, supra, 287 Conn. 509, our Supreme Court reconsidered and reversed its long-standing jurisprudence that interpreted our kidnapping statutes to include any restraint that was necessary or incidental to the commission of a separate underlying crime. Prior to *Salamon*, our Supreme Court had previously rejected claims that "the crime of kidnapping was not intended to apply to a restraint that was merely incidental to the commission of another crime." Id., 531. The court had relied on a literal interpretation of our kidnapping statutes and explained that "because the statutory definitions of the terms 'restrain' and 'abduct' contain no time or distance specifications, the offense of kidnapping does not require proof that the victim was confined for any minimum period of time or moved any minimum distance." Id., 531–32. Accordingly, our Supreme Court had held that "a person who restrains another person with the intent to prevent that person's liberation may be convicted of kidnapping even though the restraint involved in the kidnapping is merely incidental to the commission of another offense perpetrated against the victim by the accused." Id., 513, citing *State* v. *Luurtsema*, 262 Conn. 179, 202, 811 A.2d 223 (2002).

In *Salamon*, the defendant requested that our Supreme Court revisit and overrule its previous interpretation of our kidnapping statutes. *State* v. *Salamon*, supra, 287 Conn. 513. The court did reconsider its previous rulings and on reconsideration held that to commit the crime of kidnapping a defendant must have had the intent "to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." Id., 542. In changing its interpretation of our kidnapping statutes, the court noted that a considerable majority of state courts have concluded that "the crime of kidnapping does not include conduct involving a restraint that is

merely incidental to the commission of some other crime against the victim." Id., 544. In adopting this new interpretation, the court stated that the test to determine whether kidnapping could be charged in addition to an accompanying felony was "whether the confinement, movement, or detention was merely incidental to the accompanying felony or whether it was significant enough, in and of itself, to warrant independent prosecution." (Internal quotation marks omitted.) Id., 547.

In *State* v. *DeJesus,* supra, 288 Conn. 418, our Supreme Court was careful to note that the holding in *State* v. *Salamon,* supra, 287 Conn. 509, "did not refute the long-standing rule that no minimum period of restraint or degree of movement is necessary to establish a kidnapping but established that, when confinement or movement is merely incidental to the commission of another crime, [t]he guiding principal is whether the [confinement or movement] was so much a part of another substantive crime that the substantive crime could not have been committed without such acts . . . ." (Internal quotation marks omitted.) *State* v. *DeJesus,* supra, 433. In *DeJesus,* the court explained that its holding in *Salamon* established that "to commit a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." (Internal quotation marks omitted.) Id. "Whether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the particular facts and circumstances of each case." (Internal quotation marks omitted.) Id.

Having decided that the kidnapping count should be reversed because of the Supreme Court holding in *State* v. *Salamon,* supra, 287 Conn. 509, we now turn to the appropriate remand. This question was decided in *DeJesus* when the court held that because the jury was

not instructed that it could not find the defendant guilty of kidnapping unless the defendant intended "to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit [the underlying] crime," it could have convicted the defendant on the basis of conduct that was not consistent with the holding in *Salamon.* (Internal quotation marks omitted.) *State* v. *DeJesus*, supra, 288 Conn. 438. The Supreme Court held, therefore, that the defendant was entitled to a reversal of his kidnapping conviction and that the matter should be remanded to the trial court for a new trial on the charge of kidnapping so that the jury could be instructed properly.[2] Id., 439. Because in this matter, as in *DeJesus*, the conviction of kidnapping preceded the holding in *Salamon,* we follow the holding in *DeJesus*, and reverse the kidnapping conviction and remand this matter to the trial court for a new trial on the kidnapping charge.

## II

The defendant next claims that the court improperly failed to disclose fully all relevant material for cross-examination following its in camera review of the victim's medical and psychiatric records. We disagree.

Our standard of review of a challenge to a court's refusal to disclose privileged records is whether there was an abuse of discretion. *State* v. *Webb*, 75 Conn. App. 447, 457, 817 A.2d 122, cert. denied, 263 Conn. 919, 822 A.2d 244 (2003). Our Supreme Court has stated that "[a]ccess to confidential records should be left to the discretion of the trial court which is better able to assess the probative value of such evidence as it relates to the

---

[2] We note that in *State* v. *DeJesus*, supra, 288 Conn. 437, our Supreme Court overruled its conclusion in *State* v. *Sanseverino*, supra, 287 Conn. 608, that the kidnapping conviction in *Sanseverino* should be reversed and a judgment of acquittal should be rendered on that charge. Our Supreme Court holds that the proper remedy is a new trial. *State* v. *DeJesus*, supra, 437.

particular case before it . . . and to weigh that value against the interest in confidentiality of the records. . . . Once the trial court has made its inspection, the court's determination of a defendant's access to the witness' records lies in the court's sound discretion, which we will not disturb unless abused. . . . On appeal, the appellate tribunal reviews the confidential records to determine whether the trial court abused its discretion in concluding that no information contained therein is especially probative of the victim's ability to know and correctly relate the truth so as to justify breaching their confidentiality in disclosing them to the defendant." (Citations omitted; internal quotation marks omitted.) *State* v. *Francis*, 267 Conn. 162, 172, 836 A.2d 1191 (2003), aff'd after remand, 83 Conn. App. 226, 849 A.2d 873, cert. denied, 270 Conn. 912, 853 A.2d 529 (2004).

Our review of the victim's medical and psychiatric records, viewed in conjunction with the victim's testimony, leads us to conclude that the court properly determined that the undisclosed medical and psychiatric records did not contain any additional material or exculpatory information. The victim's undisclosed records do not disclose material that is especially probative of the victim's ability to know and to relate the truth correctly that would justify breaching the victim's confidentiality and disclosing the records to the defendant. See id.; see also *State* v. *Storlazzi*, 191 Conn. 453, 459–60, 464 A.2d 829 (1983) (victim's records not disclosed when found not probative of victim's ability to know and to relate truth correctly and victim's psychiatric treatment was disclosed to jury through cross-examination).

Furthermore, the court did disclose some of the victim's records, and, at the close of evidence, the court, sua sponte, stated: "In light of the evidence, I'll note for the record that I have not heard anything in the

evidence that would make me revisit my decision as to the records I reviewed in camera. I don't find that any of the evidence that I heard makes me feel any different about the exculpatory information that I disclosed, and it doesn't change my mind that there is something remaining in the records that are not disclosed that is exculpatory . . . ." We conclude that the court fully disclosed the victim's medical and psychiatric records that were exculpatory and material.

### III

The defendant's next claim is that the court improperly admitted hearsay testimony of Judith Kanz, a forensic nurse practitioner, under the medical testimony exception to the hearsay rule. See Conn. Code Evid. § 8-3 (5). The defendant makes several arguments as to why Kanz' testimony as to what the victim told her during the examination did not satisfy the medical exception to the hearsay rule. First, the defendant argues that Kanz was not a medical provider, did not provide any treatment to the victim and, therefore, was not in the " 'chain of medical treatment.' " Second, the defendant argues that because Kanz did not see the victim until nine months after the last sexual assault, the victim could not have been seeking medical treatment for injuries that already had healed. Last, the defendant argues that because the police referred the victim to Kanz, her examination of the victim was not for medical purposes but solely for an investigative purpose in preparation of a trial. The defendant, therefore, argues that Kanz' testimony did not satisfy the medical exception to the hearsay rule but, rather, was improper constancy of accusation testimony and was admitted by the court improperly. The state, on the other hand, argues that Kanz' examination of the victim was for evaluation and treatment so that the victim's

statements to her were for that purpose, and, accordingly, the court properly admitted Kanz' testimony concerning those statements under the medical testimony exception to the hearsay rule. We agree with the state.

In *State* v. *Anderson*, 86 Conn. App. 854, 864 A.2d 35, cert. denied, 273 Conn. 924, 871 A.2d 1031 (2005), this court held that testimony from Kanz, a certified nurse practitioner, as to what a victim of sexual assault said to her during the course of a medical examination was admissible under the medical exception to the hearsay rule. Id., 879. As in the present case, the defendant in *Anderson* argued that because the victim went to the nurse practitioner at the suggestion of the police, rather than for medical care, the medical exception to the hearsay rule did not apply. Id., 871. This court stated that "[t]he key on which the issue of admissibility of the victim's statement turns is the purpose of the examination" and that the victim had understood that she was going to Kanz so she could be examined for injuries that she may have sustained. Id., 878. This court held, therefore, that the purpose of the examination was not investigatory but, rather, was for medical treatment and concluded that the trial court properly admitted Kanz' testimony under the medical exception to the hearsay rule. Id., 879.

The present matter is practically indistinguishable from *State* v. *Anderson*, supra, 86 Conn. App. 854, except for the amount of time that lapsed between the sexual abuse of the victim and the examination by Kanz. In *Anderson*, the victim was examined one week to ten days after the last of numerous sexual assaults; id., 878; whereas here, the victim was examined approximately nine months later. It was the same nurse practitioner, Kanz, however, who examined both victims and testified as to her interviews with the victims and her findings after a physical examination. Additionally, in *Anderson*, the victim was aware that she went to the

hospital to be examined for injuries that she may have sustained as a result of the abuse. Id. In the present matter, during the oral history he gave to Kanz, the victim expressed his concerns about constipation, his bowel movements and his fears about whether he was "normal down there" because of the abuse. As in *Anderson*, we conclude, therefore, that the victim here believed Kanz' examination was for medical purposes. Accordingly, the court properly admitted Kanz' testimony of the victim's statements under the medical exception to the hearsay rule.

## IV

Last, the defendant claims that the court improperly considered the recidivism rate of sexual predators when sentencing him, in violation of his constitutional rights. Specifically, the defendant argues that the court improperly labeled him a sexual predator and relied on false information that sexual offenders have high recidivism rates when it determined his sentence. We disagree.

We first start with our well settled law as to what a trial court may consider when fashioning a sentence. "A sentencing judge has very broad discretion in imposing any sentence within the statutory limits and in exercising that discretion he may and should consider matters that would not be admissible at trial. . . . Generally, due process does not require that information considered by the trial judge prior to sentencing meet the same high procedural standard as evidence introduced at trial. Rather, judges may consider a wide variety of information. . . .

"Nevertheless, [t]he trial court's discretion . . . is not completely unfettered. As a matter of due process, information may be considered as a basis for a sentence only if it has some minimal indicium of reliability. . . .

As long as the sentencing judge has a reasonable, per-suasive basis for relying on the information which he uses to fashion his ultimate sentence, an appellate court should not interfere with his discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Eric M.*, 271 Conn. 641, 649–50, 858 A.2d 767 (2004). Our standard of review is thus whether the trial court abused its discretion.

The defendant claims that the court improperly con-sidered the recidivism rate of sexual predators in its sentencing of him.[3] He argues that no evidence was admitted at trial that proved he was a sexual predator or that the recidivism rates of sexual predators are high. He argues further that although the court may rely on outside information in fashioning its sentence, for a defendant to have his sentence set aside on the basis of information not presented at trial, he must establish: "(1) that the information was materially false or unrelia-ble; and (2) that the trial court substantially relied on the information in determining the sentence." *State* v. *Collette*, 199 Conn. 308, 321, 507 A.2d 99 (1986). The defendant argues that when the court relied on the high recidivism rate of sexual predators in fashioning the sentence, it met both prongs of *Collette*, and, therefore, the sentence must be set aside. The defendant's claim, however, fails on both prongs.

First, we cannot conclude that the information regarding sexual predators recidivism rates is materi-ally false or unreliable. Our Supreme Court has stated

---

[3] The defendant also argues that the court violated his right to due process when it labeled him a sexual predator without providing him an opportunity to testify and to present evidence to determine whether he was, in fact, a sexual predator. Because we conclude that there were numerous factors the court used in determining the defendant's sentence, not just that the court found the defendant to be a sexual predator, we conclude that this claim has no merit.

on several occasions that sexual offenders are perceived to have high recidivism rates. See *State* v. *Waterman*, 264 Conn. 484, 490, 825 A.2d 63 (2003) ("[t]he seriousness of the harm that sex offenders' actions cause to society and the perception, supported by some data, that such offenders have a greater probability of recidivism than other offenders have recently combined to prompt the enactment of numerous laws across the country directed specifically toward persons convicted of crimes involving sexual conduct" [internal quotation marks omitted]); *State* v. *Misiorski*, 250 Conn. 280, 292, 738 A.2d 595 (1999) ("[w]e agree with the Second Circuit Court of Appeals that Connecticut's sex offender registration and notification statutes were enacted [i]n response to concerns regarding the harm to society caused by sex crimes and the relatively high rate of recidivism among sex offenders" [internal quotation marks omitted]); see also *Roe* v. *Office of Adult Probation*, 125 F.3d 47, 48 (2d Cir. 1997) (Connecticut adopted its version of Megan's Law[4] "[i]n response to . . . concerns regarding the harm to society caused by sex crimes and the relatively high rate of recidivism among sex offenders").

Our trial courts are entitled to rely on information articulated by our Supreme Court. Accordingly, the court had a reasonable and persuasive basis to consider high recidivism rates when fashioning the defendant's sentence, and we cannot conclude that it was an abuse of discretion for the court to do so. See *State* v. *Eric M.*, supra, 271 Conn. 649–50. Moreover, this is the defendant's third conviction of sexual assault.[5] The defendant, therefore, cannot prevail on his argument that the

---

[4] Sex offender registration and notification statutes came to be known as "Megan's Law" after they were enacted as a result of the 1994 sexual assault and murder in New Jersey of seven year old Megan Kanka. *Roe* v. *Office of Adult Probation*, supra, 125 F.3d 48 n.1.

[5] The defendant was found guilty, after a jury trial, on May 17, 1989, of sexual assault in the second degree and risk of injury to a child. See *State* v. *Martin* [*M.*], 24 Conn. App. 146, 585 A.2d 1271 (1991). He also pleaded

court's consideration of the high recidivism rates of sexual offenders, including his recidivism, was based on information that was materially false or unreliable.

Second, our review of the sentencing transcript leads us to conclude that the court's reliance on the high recidivism rate of sexual predators was just one consideration in the court's sentence and not one on which the court substantially relied. The court articulated a myriad of reasons as to why it sentenced the defendant to an effective term of thirty years incarceration. The court indicated that it considered, along with the recidivism rate of sexual predators, the defendant's prior criminal record, his history of violence, in particular his history of domestic violence, the severity of the abuse he inflicted on the victim, his lack of remorse or understanding of the consequences of his actions and the fact that his prior prison sentences have not had any effect on his ability to be a productive member of society. When a claim that a sentence was based on improper considerations is heard on appeal, "we should review the record to ensure that there is a persuasive basis for the conclusion reached by the sentencing court. . . . There is no simple formula for determining what information considered by a sentencing judge is sufficiently reliable to meet the requirements of due process. The question must be answered on a case by case basis." (Citation omitted; internal quotation marks omitted.) Id., 651. Regardless of whether sexual offenders have a high recidivism rate, the fact of the defendant's recidivism coupled with his history of violence, the severity of abuse to the victim and his lack of remorse, created a persuasive basis for the court to fashion the sentence that it did. We conclude, therefore, that the court did not abuse its discretion and did not

guilty to a charge of sexual assault in the fourth degree on September 17, 1997.

substantially rely on just the high recidivism rates of sexual predators.

The judgment is reversed only as to the conviction of kidnapping in the first degree and the case is remanded for a new trial on that count. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.