## STATE OF CONNECTICUT *v.* GREGORY LAMONT MILLER
### (AC 30096)

DiPentima, Robinson and Hennessy, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued March 16—officially released June 15, 2010

*Joseph Visone*, special public defender, for the appellant (defendant).

*Nancy L. Walker*, special deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Herbert E. Carlson, Jr.*, former supervisory assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Gregory Lamont Miller, appeals from the judgment of conviction, rendered after a jury trial, of one count of attempt to commit sexual assault in the first degree in violation of

General Statutes §§ 53a-49 (a) (2) and 53a-70 (a) (2), one count of risk of injury of a child in violation of General Statutes (Rev. to 2001) § 53-21 (a) (1), two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and four counts of risk of injury to a child in violation of General Statutes (Rev. to 2003) § 53-21 (a) (2). On appeal, the defendant claims that the trial court improperly (1) admitted into evidence certain out-of-court statements by the victim[1] and (2) denied the defendant's motion to dismiss for lack of a speedy trial pursuant to General Statutes § 54-82m. We disagree and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In the spring of 2001, the victim was eight years old and resided in an apartment with her mother, siblings and the defendant. On one occasion, the defendant removed the victim's shorts and underwear and attempted to penetrate her anally. The victim did not report this incident to anyone at the time because she was "scared and embarrassed." The defendant subsequently left the residence, and this caused the victim to feel safe and confident that it would not happen again.

In January, 2003, the defendant returned to the residence. The defendant again sexually assaulted the victim. Specifically, there were instances of oral sex and penile-vaginal intercourse. In March, 2003, the victim told family members and a friend what the defendant had done. The next day, the victim was taken to Connecticut Children's Medical Center. After spending nearly four hours there, the victim was referred to Saint Francis Hospital and Medical Center (Saint Francis Hospital) for subsequent medical treatment.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

The operative information set forth ten counts charging the defendant with offenses from 2001 and 2003. Following a trial, the jury returned a guilty verdict with respect to eight of the counts contained in the information.[2] The court sentenced the defendant to ninety years incarceration. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly admitted into evidence certain out-of-court statements by the victim. Specifically, he contends that testimony of Lisa Murphy-Cipolla, a licensed family therapist, regarding statements made to her by the victim, were admitted into evidence improperly under the medical treatment exception to the rule against hearsay. See Conn. Code Evid. § 8-3 (5). The defendant argues that the primary purpose of Murphy-Cipolla's interview with the victim was to obtain information for police officers that supported their application for a search warrant. We conclude that the court properly admitted the testimony pursuant to the medical treatment exception.

The following additional facts are necessary for our resolution of this issue. After initially receiving medical treatment at Connecticut Children's Medical Center, the victim was referred to Saint Francis Hospital. On April 3, 2003, Murphy-Cipolla, an employee of the Aetna Foundation Children's Center, which is located at Saint Francis Hospital, interviewed the victim for approximately fifty minutes. Outside of the presence of the jury, Murphy-Cipolla stated that the victim told her of multiple instances of abuse by the defendant. The victim detailed one incident that occurred in the kitchen of the residence. As a result of this incident, semen was

---

[2] The jury returned a verdict of not guilty with respect to counts three and nine of the information. These counts had alleged that the defendant committed sexual assault in the first degree in violation of § 53a-70 (a) (2).

deposited on a chair cushion, and subsequent DNA testing revealed that the defendant was a contributor. Police officers observed Murphy-Cipolla's interview with the defendant behind a one-way mirror. At one point, Murphy-Cipolla consulted with an officer and asked the victim about the kitchen chair cushion.

The defendant objected on the ground that Murphy-Cipolla's testimony regarding the victim's statements to her during the interview constituted inadmissible hearsay. After hearing argument from counsel, the court ruled that the victim's statements to Murphy-Cipolla, while hearsay, fell within the medical treatment exception. Following the court's ruling, the jury returned to the courtroom, and Murphy-Cipolla testified that the victim told her that the defendant had sexually assaulted her. In addition to details about the various assaults, Murphy-Cipolla further testified that the victim stated that the defendant had ejaculated during some of the assaults and that afterward, the victim's vagina was sore and red. Murphy-Cipolla concluded her testimony by indicating that the victim was aware that these incidents would affect her for the rest of her life and that she had to tell someone about them.

As a general rule, hearsay is inadmissible unless an exception from the Code of Evidence, the General Statutes or the rules of practice applies. See Conn. Code Evid. § 8-2; *State* v. *Anderson*, 86 Conn. App. 854, 876, 864 A.2d 35, cert. denied, 273 Conn. 924, 871 A.2d 1031 (2005). Section 8-3 of the Connecticut Code of Evidence, which describes the medical treatment exception to the hearsay rule, provides in relevant part: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness . . . (5) . . . A statement made for purposes of obtaining a medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external

source thereof, insofar as reasonably pertinent to the medical diagnosis or treatment." "In other words, the admissibility of out-of-court statements made by a patient to a medical care provider depends on whether the statements were made for the purposes of obtaining medical diagnosis or treatment. . . . The rationale for excluding from the hearsay rule statements made in furtherance of obtaining treatment is that we presume that such statements are inherently reliable because the patient has an incentive to tell the truth in order to obtain a proper medical diagnosis and treatment. . . . The term medical encompasses psychological as well as somatic illnesses and conditions." (Citations omitted; internal quotation marks omitted.) *State* v. *Donald M.*, 113 Conn. App. 63, 70, 966 A.2d 266, cert. denied, 291 Conn. 910, 969 A.2d 174 (2009); see also *State* v. *Cruz*, 260 Conn. 1, 7–8, 792 A.2d 823 (2002).

"Our Supreme Court recently enunciated a two part standard of review for claims of evidentiary error. In *State* v. *Saucier*, 283 Conn. 207, 926 A.2d 633 (2007) (en banc), the court stated: To the extent a trial court's admission of evidence is based on an interpretation of the [Connecticut] Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. They require determinations about which reasonable minds may not differ; there is no judgment call by the trial court . . . . We review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Telford*, 108 Conn. App. 435, 439, 948 A.2d 350, cert. denied, 289 Conn. 905, 957 A.2d 875 (2008). In order to determine the appropriate standard of review, we must look to the precise nature of the claim raised on appeal. See *State* v. *Saucier*, supra,

217–18. We first determine the appropriate standard of review by examining the nature of the defendant's claim.

The defendant argues that the primary purpose of the victim's interview with Murphy-Cipolla was to provide information to the observing police officer with the ultimate goal of obtaining a search warrant for the kitchen cushions. A similar claim was raised in *State v. Anderson*, supra, 86 Conn. App. 874–75. In *Anderson*, we stated: "The key on which the issue of admissibility of the victim's statements turns is the purpose of the examination. The defendant claims the purpose of the examination was investigatory, but the court concluded that it was for treatment." Id., 878. In rejecting the defendant's claim, we observed: "To the extent that the court made its decision on credibility grounds, we yield, as we must, to the court's assessment. See *State v. Rollins*, 51 Conn. App. 478, 485, 723 A.2d 817 (1999)." *State v. Anderson*, supra, 879. Additionally, we note that in *Saucier*, our Supreme Court stated that "appellate courts will defer to the trial court's determinations on issues dictated by the exercise of discretion, fact finding, or credibility assessments." *State v. Saucier*, supra, 283 Conn. 219. Because the purpose of the victim's interview with Murphy-Cipolla is determined on the basis of the credibility of the witnesses, we employ the abuse of discretion standard.

Jean Carlson, the triage nurse at Connecticut Children's Medical Center, testified that the victim was referred to Saint Francis Hospital for subsequent medical treatment. At that time, Connecticut Children's Medical Center was "limited" as to what it could do for the victim. Therefore, patients were referred to Saint Francis Hospital because that was "where abuse cases were followed up." The victim's father testified that he took the victim to Saint Francis Hospital for the purpose of obtaining further medical treatment.

Murphy-Cipolla testified that she had earned a master's degree in counselor education with a specialization in marriage and family therapy and was licensed as a family therapist. She also detailed her training and experience with interviewing victims of abuse. As part of her employment, she conducted diagnostic interviews for the evaluation, treatment and prevention of child abuse.[3] She stated specifically: "The purpose of the interview is to elicit clear and accurate information, minimize any additional trauma and then, based on what is disclosed during the course of an interview, to go on and *make the necessary recommendations for mental health and, or, the need for a medical exam.*" (Emphasis added.) She also noted that the interviewer's report is part of the medical record and is shared with the medical provider. While the victim was at Saint Francis Hospital, a pediatric nurse practioner, Audrey Courtney, performed a medical examination of the victim. Courtney testified that she used the information obtained by Murphy-Cipolla during the interview in the course of the medical examination of the victim.

On the basis of this evidence, we cannot conclude that the court abused its discretion in finding that the purpose of the victim's interview was for medical treatment. The court heard testimony from several witnesses and found them to be credible.[4] We yield to the court's

[3] The medical treatment exception is not limited to physicians and has been extended to include other professionals, including social workers, so long as the professional has been found to be acting within the chain of the medical case. See *State* v. *Juan V.*, 109 Conn. App. 431, 446, 951 A.2d 651, cert. denied, 289 Conn. 931, 958 A.2d 161 (2008). On appeal, the defendant does not challenge the application of this exception to Murphy-Cipolla.

[4] We are mindful that the victim herself testified that she did not know why she was taken to Saint Francis Hospital. Our case law, however, consistently has stated that in cases involving juveniles, the requirement that statements must be both pertinent to treatment and motivated by a desire for treatment may be satisfied inferentially. *State* v. *Telford*, supra, 108 Conn. App. 441–42; see also *State* v. *Donald M.*, supra, 113 Conn. App. 71; *State* v. *Juan V.*, 109 Conn. App. 431, 446–47, 951 A.2d 651, cert. denied, 289 Conn. 931, 958 A.2d 161 (2008); *State* v. *William B.*, 76 Conn. App. 730, 741–42,

assessment on such matters. See *State* v. *Anderson*, supra, 86 Conn. App. 879. Further, we are not persuaded by the defendant's argument that because the victim knew that police officers were present during the interview, the purpose of her interview with Murphy-Cipolla was not for medical treatment. This fact does not undermine the medical treatment purpose of the interview. Cf. *State* v. *Slater*, 285 Conn. 162, 184, 939 A.2d 1105, cert. denied, 553 U.S. 1085, 128 S. Ct. 2885, 171 L. Ed. 2d 822 (2008). Last, we reject the defendant's contention that the court relied on pure speculation that the victim would be more truthful in response to Murphy-Cipolla's questions because she knew of the police presence. Although the court mentioned that it was likely that such knowledge would "strengthen her resolve . . . to be forthcoming and to be more accurate," we are satisfied that the court merely was opining that the hearsay, already found to be reliable due to the operation of the medical treatment exception, was even more so due to the presence of the police officer. We fail to see, however, how this statement affected the court's determination of the admissibility of the testimony from Murphy-Cippolla. We conclude, therefore, that the court did not abuse its discretion in permitting Murphy-Cipolla's testimony to be admitted into evidence.

## II

The defendant next claims that the court improperly denied his motion to dismiss the case for lack of a speedy trial pursuant to § 54-82m. Specifically, he argues that his statutory right to a speedy trial was violated and that the court improperly failed to dismiss the criminal charges against him. We disagree.

The following additional facts are necessary for the resolution of the defendant's claim. The defendant was

822 A.2d 265, cert. denied, 264 Conn. 918, 828 A.2d 618 (2003); *State* v. *Dollinger*, 20 Conn. App. 530, 535–36, 568 A.2d 1058, cert. denied, 215 Conn. 805, 574 A.2d 220 (1990).

arrested on March 28, 2004. On June 1, 2005, the defendant rejected a plea bargain offer made by the state. On June 1, 2007, the defendant filed a motion to dismiss, pursuant to Practice Book § 41-8 (5), (7) and (9). He alleged in this motion that since June 1, 2005, there had been no "prosecution or other disposition of these [matters]." He further argued that the charges against him should have been nolled by operation of law and dismissed. As authority, he cited Practice Book § 43-39 (d),[5] General Statutes § 54-142a (c)[6] and *State* v. *Winer*, 99 Conn. App. 579, 915 A.2d 883 (2007), rev'd, 286 Conn. 666, 945 A.2d 430 (2008).[7] In the alternative, the defendant also alleged: "[Practice Book §] 43-39 et seq., as provided for in [General Statutes] § 54-82m, establishes certain specific time limits during which criminal defendants shall be brought to trial, effectuating the right to a speedy trial guaranteed by [a]rticle [first, § 8, of] the [c]onstitution of the [s]tate of Connecticut and the [sixth] [a]mendment to the [c]onstitution of the United States. . . . [The] [d]efendant's case has been pending

___

[5] Practice Book § 43-39 (d) provides: "The trial of such defendant shall commence within eight months from the filing of the information or from the date of the arrest, whichever is later, if the following conditions are met:

"(1) the defendant has been continuously incarcerated in a correctional institution of this state pending trial for such offense; and

"(2) the defendant is not subject to the provisions of General Statutes § 54-82c."

[6] In 2008, § 54-142a (c) was divided into subdivisions and was the subject of technical amendments. See Public Acts 2008, No. 08-151, § 1. Because those amendments have no bearing on this appeal, in the interest of simplicity, we refer to the current revision of § 54-142a. General Statutes § 54-142a (c) (2) provides: "Whenever any charge in a criminal case has been continued at the request of the prosecuting attorney, and a period of thirteen months has elapsed since the granting of such continuance during which period there has been no prosecution or other disposition of the matter, the charge shall be construed to have been nolled as of the date of termination of such thirteen-month period and such erasure may thereafter be effected or a petition filed therefor, as the case may be, as provided in this subsection for nolled cases."

[7] At all relevant times, *Winer* had not yet been overruled by our Supreme Court.

in excess of the eight month period specified by [Practice Book §] 43-39 et seq. and . . . § 54-82m."[8]

On August 8, 2007, the court denied the defendant's motion. Specifically, it determined that the defendant's case factually was distinguishable from the *Winer* case. It did not, however, expressly address the defendant's § 54-82m claim.

"The speedy trial statute [§ 54-82m] requires the judges of the Superior Court to adopt rules that are necessary to assure a speedy trial for any person charged with a criminal offense . . . . With respect to a defendant who is incarcerated in a correction institution of this state pending trial, § 54-82m requires the rules to provide: (1) in any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of a criminal offense shall commence . . . within eight months from the filing date of the information or indictment or from the date of arrest, whichever is later; and

---

[8] General Statutes § 54-82m provides: "In accordance with the provisions of section 51-14, the judges of the Superior Court shall make such rules as they deem necessary to provide a procedure to assure a speedy trial for any person charged with a criminal offense on or after July 1, 1985. Such rules shall provide that (1) in any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of a criminal offense shall commence within twelve months from the filing date of the information or indictment or from the date of the arrest, whichever is later, *except that when such defendant is incarcerated in a correctional institution of this state pending such trial and is not subject to the provisions of section 54-82c, the trial of such defendant shall commence within eight months from the filing date of the information or indictment or from the date of arrest, whichever is later*; and (2) if a defendant is not brought to trial within the time limit set forth in subdivision (1) of this section and a trial is not commenced within thirty days of a motion for a speedy trial made by the defendant at any time after such time limit has passed, the information or indictment shall be dismissed. Such rules shall include provisions to identify periods of delay caused by the action of the defendant, or the defendant's inability to stand trial, to be excluded in computing the time limits set forth in subdivision (1) of this section." (Emphasis added.)

(2) if a defendant is not brought to trial within the time limit set forth in subdivision (1) and a trial is not commenced within thirty days of a motion for a speedy trial made by the defendant at any time after such time limit has passed, the information or indictment shall be dismissed. Such rules shall include provisions to identify periods of delay caused by the action of the defendant, or the defendant's inability to stand trial, to be excluded in computing the time limits set forth in subdivision (1). . . . Practice Book § 43-40 then sets forth ten circumstances constituting those periods of time [that] shall be excluded in computing the [eight months] within which the trial of a defendant . . . must commence pursuant to Section 43-39 . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Cote*, 101 Conn. App. 527, 532–33, 922 A.2d 322, cert. denied, 284 Conn. 901, 931 A.2d 266 (2007); see also *State* v. *Rosario*, 118 Conn. App. 389, 394–95, 984 A.2d 98 (2009), cert. denied, 295 Conn. 903, 988 A.2d 879 (2010).

"The determination of whether a defendant has been denied his right to a speedy trial is a finding of fact, which will be reversed on appeal only if it is clearly erroneous. . . . The trial court's conclusions must stand unless they are legally and logically inconsistent with the facts. . . . Although the right to a speedy trial is fundamental, it is necessarily relative, since a requirement of unreasonable speed would have an adverse impact both on the accused and on society." (Internal quotation marks omitted.) *State* v. *Jeffreys*, 78 Conn. App. 659, 669–70, 828 A.2d 659, cert. denied, 266 Conn. 913, 833 A.2d 465 (2003); see also *State* v. *Mish*, 110 Conn. App. 245, 251, 954 A.2d 854, cert. denied, 289 Conn. 941, 959 A.2d 1008 (2008); see generally *State* v. *Bonner*, 290 Conn. 468, 479–81, 964 A.2d 73 (2009).

In the present case, the court did not address the defendant's § 54-82m claim. The defendant never filed

a motion for articulation pursuant to Practice Book § 66-5. Additionally, the record is devoid of any information that would apply to whether any of the relevant time period was subject to exclusion; see Practice Book § 43-40; from the speedy trial calculus. In short, the record is inadequate to review the defendant's claim.

Practice Book § 61-10 provides in relevant part that "[i]t is the responsibility of the appellant to provide an adequate record for review. . . ." Moreover, we have stated that "[i]t is incumbent upon the appellant to take the necessary steps to sustain its burden of providing an adequate record for appellate review. . . . Our role is . . . to review claims based on a complete factual record developed by a trial court." (Citation omitted; internal quotation marks omitted.) *State* v. *Cotto*, 111 Conn. App. 818, 821, 960 A.2d 1113 (2008). Put another way, "[w]ithout the necessary factual and legal conclusions furnished by the trial court, any decision made by us respecting the defendant's claims would be entirely speculative." (Internal quotation marks omitted.) *State* v. *Thompson*, 120 Conn. App. 288, 290, 991 A.2d 661, cert. denied, 296 Conn. 909, 993 A.2d 468 (2010). Accordingly, we decline to review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.