******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* AMANDA AZEVEDO
## (AC 38124)

Lavine, Kahn and Bishop, Js.

*Syllabus*

Convicted of the crimes of arson in the first degree, attempt to commit insurance fraud, attempt to commit larceny in the first degree, conspiracy to commit arson in the first degree, conspiracy to commit insurance fraud and conspiracy to commit larceny in the first degree in connection with an arson that destroyed her home, the defendant appealed to this court. She claimed, inter alia, that certain out-of-court statements that D, her coconspirator, had made to an insurance company fire investigator and to two police officers, and certain testimony that D had given in a deposition in a related civil action, should not have been admitted into evidence because they constituted inadmissible hearsay and violated her sixth amendment right to confrontation. D had told the investigator about the defendant's actions and whereabouts on the morning of the fire, and testified similarly in the deposition. After a memorial service for the defendant's late husband, D asked to speak to the police officers privately and told them that the defendant was responsible for setting her house on fire and how she set the fire, that he was present while items were being removed from the defendant's home prior to the fire and that there was a video of the items being removed. The trial court determined, on the basis of D's deposition testimony and statements to the investigator, that the state had established, by a fair preponderance of the evidence, the existence of a conspiracy between D and the defendant, and, therefore, that D's deposition testimony and statements to the investigator were admissible under § 8-3 (1) (D) of the Connecticut Code of Evidence as statements of a coconspirator in furtherance of a conspiracy. The trial court further determined that D's statements to the police officers inculpated both himself and the defendant, and, thus, were admissible as dual inculpatory statements under § 8-6 (4) of the Connecticut Code of Evidence. *Held*:

1. The defendant could not prevail on her claim that the trial court improperly admitted into evidence D's deposition testimony and statements to the investigator as statements of a coconspirator in furtherance of a conspiracy under § 8-3 (1) (D) of the Connecticut Code of Evidence: although that court admitted D's statements and deposition testimony for their substantive use, the statements were not admitted to prove their contents but, rather, were admitted as verbal acts in furtherance of a conspiracy, and, therefore, because the statements and testimony were not testimonial in nature, the defendant's right of confrontation was not implicated; moreover, in light of the extrinsic evidence of the conspiracy presented by the state, which included evidence of discrepancies concerning the defendant's activities and whereabouts on the morning of the fire, and showing D's presence at the defendant's home days prior to the fire when the defendant's belongings were removed from the home and that D wanted the defendant's husband to receive the insurance proceeds from the fire, it was not clearly erroneous for the trial court to conclude that the state had proven the existence of a conspiracy between D and the defendant by a fair preponderance of the evidence so as to permit the jury to consider D's deposition testimony and statements as evidence of the continuing conspiracy under § 8-3 (1) (D).

2. The trial court properly characterized D's statements to the police officers as dual inculpatory statements under § 8-6 (4) of the Connecticut Code of Evidence: D's statements to the police officers reasonably could be characterized as inculpating both himself and the defendant, as D reasonably understood that his statements were against his penal interest in that they implicated him in the conspiracy to commit insurance fraud, D was unavailable to testify at the defendant's trial in that he would have invoked his fifth amendment right against self-incrimination had he been called to testify, and his statements presented sufficient indicia of reliability; moreover, given the substantial amount of admissible evidence adduced at trial that supported the defendant's conviction,

any possible error in the court's admission of D's statements to the officers as dual inculpatory statements was harmless beyond a reasonable doubt.

3. The record was inadequate to review the defendant's unpreserved claim that the state's use of cell site location information pertaining to her phone records violated her rights under article first, § 7, of the state constitution; for the defendant to prevail on her claim, she had to demonstrate that the state or an entity acting on behalf of the state obtained the phone records, but the trial record was silent in that regard, as it was unclear from the record who had issued the subpoena to obtain the records, and, thus, the defendant could not establish that the claimed violation of her constitutional rights was the result of state action.

Argued September 11—officially released December 19, 2017

*Procedural History*

Substitute information charging the defendant with the crimes of arson in the first degree, attempt to commit insurance fraud, attempt to commit larceny in the first degree, conspiracy to commit arson in the first degree, conspiracy to commit insurance fraud and conspiracy to commit larceny in the first degree, brought to the Superior Court in the judicial district of Fairfield, where the court, *Blawie*, *J.*, denied the defendant's motion to preclude certain evidence; thereafter, the matter was tried to the jury; verdict and judgment of guilty, from which the defendant appealed to this court; subsequently, the court, *Blawie*, *J.*, issued an articulation of its decision. *Affirmed.*

*John R. Williams*, for the appellant (defendant).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Howard S. Stein*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Amanda Azevedo, appeals from the judgment of conviction, rendered after a jury trial, of the following six counts: (1) arson in the first degree in violation of General Statutes § 53a-111 (a) (3); (2) attempt to commit insurance fraud in violation of General Statutes §§ 53a-215 and 53a-49; (3) attempt to commit larceny in the first degree in violation of General Statutes §§ 53a-49, 53a-119 and 53a-122 (a) (2); (4) conspiracy to commit arson in the first degree in violation of General Statutes §§ 53a-48 and 53a-111 (a) (3); (5) conspiracy to commit insurance fraud in violation of General Statutes §§ 53a-48 and 53a-215; and (6) conspiracy to commit larceny in the first degree in violation of General Statutes §§ 53a-48, 53a-119 and 53a-122 (a) (2). On appeal, the defendant argues that (1) out-of-court statements of a coconspirator that the trial court admitted into evidence constituted inadmissible hearsay and violated the confrontation clause of the sixth amendment to the United States constitution, and (2) that the state's use of cell site location information violated article first, § 7, of the constitution of Connecticut. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On January 28, 2008, at approximately 9:50 a.m., the defendant's neighbor called 911 to report a fire at the defendant's residence. The neighbor saw the flames through a window in front of the defendant's home. No one was home at the time the neighbor called 911, and the defendant was the last person to have been in the house before the fire. The fire destroyed the defendant's home. After firefighters extinguished the flames, state and local fire marshals began examining the circumstances of the fire, as well as the defendant's behavior. Lengthy police and insurance company investigations ensued.

The police and insurance company investigations revealed the following details of the defendant's personal life and financial situation at the time of the fire. The defendant was unemployed and her husband, Joao Azevedo, owned a small flooring business, which was the family's sole source of income. Azevedo's business was failing, however, due to his opioid addiction. On the day of the fire, the defendant's husband was set to be released from an inpatient treatment program for his opioid addiction. At the time of the fire, the defendant and her husband were making late payments to various creditors and had trouble paying for necessities such as home heating oil, health insurance, and property insurance premiums. Additionally, the defendant and her husband had federal and state tax liens of nearly $145,000 filed against their home as a result of unpaid income taxes. Two weeks prior to the fire, Norwalk police arrested the defendant's husband on a charge of writing a bad check to a supplier for more than $25,000

worth of hardwood flooring.

On January 10, 2008, eighteen days prior to the fire, the defendant called her local insurance agent to inquire about the status and expiration date of her homeowner's insurance policy. Although the defendant's insurance carrier had threatened cancellation due to late payments, the policy was in effect on the date of the fire. Additionally, days prior to the fire, the defendant and coconspirator Diniz Depina removed items from the defendant's home such as furniture, jewelry, and personal documents. After the fire, the defendant filed a claim with her insurance company for payment of $1,235,087.45 in losses caused by the fire.

Due to the suspicious circumstances surrounding the fire, the defendant's insurance company hired investigator Robert Corry, who conducted a detailed cause and origin investigation. After completing his investigation, Corry reached the conclusion that the fire at the defendant's home had been intentionally set.

On January 5, 2015, the state charged the defendant in an amended information with arson in the first degree; conspiracy to commit arson in the first degree; attempt to commit insurance fraud; conspiracy to commit insurance fraud; attempt to commit larceny in the first degree; and conspiracy to commit larceny in the first degree. On March 6, 2015, a jury found the defendant guilty of all charges. On April 24, 2015, the court sentenced the defendant to a total effective sentence of ten years of imprisonment, execution suspended after four years, and three years of probation. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

On appeal, the defendant argues that the admission of certain statements made by Depina constituted inadmissible hearsay and violated the confrontation clause of the sixth amendment to the United States constitution. The statements at issue are Depina's statements to Corry; Depina's deposition testimony, which echoes his statements to Corry; and Depina's statements to Laura Azevedo Rasuk and Johanna Angelo, both of whom are family friends and Bridgeport police officers. The state responds that Depina's statements to Corry and Depina's deposition testimony were admissible as statements of a coconspirator in furtherance of a conspiracy under § 8-3 (1) (D) of the Connecticut Code of Evidence. The state further argues, with respect to Depina's statements to Rasuk and Angelo, that the defendant waived her right to claim a confrontation clause violation under *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), and that the statements were properly admitted as dual inculpatory statements. We agree with the state.

"The [c]onfrontation [c]lause . . . bars the admis-

sion of some evidence that would otherwise be admissible under an exception to the hearsay rule." (Internal quotation marks omitted.) *State* v. *Camacho*, 282 Conn. 328, 347–48, 924 A.2d 99, cert. denied, 552 U.S. 956, 128 S. Ct. 338, 169 L. Ed. 2d 273 (2007). "[W]hen faced with the issue of the contested admission of hearsay statements against the accused in a criminal trial, courts first must determine whether the statement is testimonial." Id., 349. Although the Supreme Court declined to define the term "testimonial," it noted, however, that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a formal trial; and to police interrogations." *Crawford* v. *Washington*, supra, 541 U.S. 68. "Various formulations of this core class of testimonial statements exist: ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to use prosecutorially . . . ." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 51–52.

Accordingly, even though the Supreme Court did not establish a "comprehensive definition of testimonial, it is clear that much of the [United States] Supreme Court's and our jurisprudence applying *Crawford* largely has focused on the reasonable expectation of the declarant that, under the circumstances, his or her words later could be used for prosecutorial purposes." (Internal quotation marks omitted.) *State* v. *Slater*, 285 Conn. 162, 172, 939 A.2d 1105, cert. denied, 553 U.S. 1085, 128 S. Ct. 2885, 171 L. Ed. 2d 822 (2008). "[T]his expectation must be *reasonable* under the circumstances and not some subjective or far-fetched, hypothetical expectation that takes the reasoning in *Crawford* and *Davis* [v. *Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006)] to its logical extreme." (Emphasis in original.) *State* v. *Slater*, supra, 175.

"[T]he threshold inquiries that determine the nature of the claim are whether the statement was hearsay, and if so, whether the statement was testimonial in nature, questions of law over which our review is plenary." *State* v. *Smith*, 289 Conn. 598, 618–19, 960 A.2d 993 (2008). "To the extent a trial court's admission of evidence is based on an interpretation of the [Connecticut] Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. They require determinations about which reasonable minds may not differ; there is no judgment call by the trial court." (Internal quotation marks omitted.) *State* v. *Miller*, 121 Conn. App. 775, 780, 998 A.2d 170, cert. denied, 298 Conn. 902,

## A
### Depina's Statements to Corry and Depina's Deposition Testimony

We begin with the defendant's argument that the admission into evidence of Depina's statements to Corry and Depina's deposition testimony violated the defendant's right to confrontation under the sixth amendment to the United States constitution and were improperly admitted under § 8-3 (1) (D) of the Connecticut Code of Evidence as statements of a coconspirator in furtherance of a conspiracy. We disagree.

The following additional facts and procedural history are relevant in part to our decision. In the course of his investigation on behalf of the defendant's insurance company, Corry interviewed Depina. Depina also gave a deposition during the course of the civil litigation stemming from the defendant's insurance claim after the fire. Depina told Corry, and testified in his deposition, that the defendant called him at approximately 9 a.m. on the morning of the fire. Depina testified that the defendant then stopped by his house after visiting her husband at Griffin Hospital, which was close to Depina's house. Depina told Corry that the defendant was at his house because he was borrowing money from her. He stated, as well, that the defendant had stopped by to drop off money so he could purchase food for a party the defendant was throwing to welcome her husband home from the hospital. The defendant remained at Depina's residence for approximately fifteen minutes. The next communication between Depina and the defendant occurred when she called him and exclaimed that her house was on fire.

Initially, the trial court admitted Depina's statements to Corry for the limited purpose of showing only that the statements were "in fact, made by Mr. Depina to this witness, Mr. Corry." The court gave the jury a limiting instruction to that effect. Later, the court found from the introduction of additional evidence, that the state had established the existence of a conspiracy between Depina and the defendant by a fair preponderance of the evidence. On that basis, the court removed the limiting instruction and admitted Depina's statements to Corry for their substantive use under § 8-3 (1) (D) of the Connecticut Code of Evidence. The court also admitted Depina's deposition transcript into evidence for its substantive use pursuant to the same section of the code.

In assessing the propriety of the court's decision to permit into evidence Depina's statements to Corry and Depina's deposition testimony, we first must determine whether the statements and deposition testimony were testimonial in nature. This is a question of law over which our review is plenary. See *State* v. *Smith*, supra, 289 Conn. 618–19. The defendant argues that both the

statements to Corry and the deposition testimony are testimonial in nature. The state argues, on the other hand, that the court properly admitted Depina's statements to Corry and deposition testimony as verbal acts in furtherance of a conspiracy and that, because the statements were not admitted for the truth of their contents, they cannot be considered testimonial in nature. We agree with the state.

"In Connecticut, an out-of-court statement offered to prove the truth of the matter asserted is hearsay. . . . If such a statement is offered for a purpose other than establishing the truth of the matters contained in the statement, it is not hearsay." (Citation omitted.) *State* v. *Esposito*, 223 Conn. 299, 315, 613 A.2d 242 (1992). "[T]he matter asserted [is] the matter asserted by the [statement], not the matter asserted by the proponent of the evidence." (Internal quotation marks omitted.) Id. "If the state again introduces [a declarant's] statement for the nonhearsay purpose of simply proving that it was made, the defendant's right of confrontation will not be implicated." Id., 316. Even *Crawford* acknowledged that, generally speaking, the admission of out-of-court statements for purposes other than their truth, such as statements in furtherance of a conspiracy, do not raise confrontation clause issues. See *Crawford* v. *Washington*, supra, 541 U.S. 56 ("[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial—for example . . . statements in furtherance of a conspiracy"); see also id., 60 n.9 ("The [c]lause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it. [The (c)lause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. . . .]" [Citation omitted.]).

Section 8-3 of the Connecticut Code of Evidence provides in relevant part: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness . . . (1) . . . (D) a statement by a coconspirator of a party while the conspiracy is ongoing and in furtherance of a conspiracy . . . ." Before the court can admit statements made in furtherance of a conspiracy, the court must find the existence of a conspiracy by a fair preponderance of the evidence. See *State* v. *Camacho*, supra, 282 Conn. 354. "[T]he evidence will be construed in a way most favorable to sustaining the preliminary determinations of the trial court; its conclusions will not be disturbed on appeal unless found to be clearly erroneous." (Citation omitted.) Id.

The defendant contends that the court admitted Depina's statements to Corry and Depina's deposition testimony for the truth of their contents. The record belies this claim, however. Although the court subsequently admitted Depina's statements to Corry and Depina's deposition testimony for their substantive use, the statements were not admitted to prove their contents.

Rather, the state sought to admit these statements as verbal acts. Indeed, the state expressly stated its position that the statements were false, but that they evidenced a false interlocking alibi between the defendant and Depina.[1] Therefore, they were, in short, verbal acts in furtherance of a conspiracy. The matters asserted by the statements at issue here were that the defendant had gone to Depina's house to give him money after visiting her husband in the hospital. The state's position was that these statements were false and were made as part of a continuing conspiracy. Accordingly, because the statements made in furtherance of the conspiracy were not admitted for the truth of the matters asserted therein, the defendant's claim under the confrontation clause of the sixth amendment to the United States constitution must fail with respect to Depina's statements to Corry and his deposition testimony. See *State* v. *Carpenter*, 275 Conn. 785, 821, 882 A.2d 604 (2005), cert. denied, 547 U.S. 1025, 126 S. Ct. 1578, 164 L. Ed. 2d 309 (2006); see also *State* v. *Foster*, 293 Conn. 327, 334–35, 977 A.2d 199 (2009) (concluding that *Crawford* not violated because trial court admitted statements for purpose other than for truth of matter asserted, and, therefore, statements were not inadmissible either on hearsay grounds or pursuant to rule in *Crawford*).

Additionally, at the time the court admitted Depina's statements to Corry and Depina's deposition testimony, the court had heard extrinsic evidence of the conspiracy. Thus, it was not clearly erroneous for the court to conclude that the state had proven the existence of a conspiracy between the defendant and Depina by a fair preponderance of the evidence, so as to then permit the jury to consider Depina's statements to Corry and deposition testimony as evidence of the continuing conspiracy. The extrinsic evidence that the state presented to demonstrate the existence of the conspiracy included a transcript of the defendant's interview with Corry, in which she detailed her activities on the morning of the fire. The state also produced the defendant's cell phone records, which contradicted the timing and locations that the defendant described in her interview with Corry. In addition, the state produced Depina's cell phone records, which contradicted the timing he described in his interview with Corry and in his deposition regarding his communications with the defendant on the morning of the fire. The court also heard testimony regarding Depina's presence at the defendant's home days prior to the fire when the defendant's belongings were removed from the home, and that Depina wanted the defendant's husband to receive the insurance proceeds from the fire.

Before admitting these statements pursuant to § 8-3 (1) (D), the trial court needed to find only that the state had proven the existence of a conspiracy by a fair preponderance of the evidence. This standard is

substantially lower than the "beyond a reasonable doubt" standard required to convict a criminal defendant. On the basis of the evidence that the state presented, it was not clearly erroneous for the court to find the existence of a conspiracy by a fair preponderance of the evidence. Accordingly, the trial court properly interpreted Depina's statements to Corry and Depina's deposition testimony as statements of a coconspirator in furtherance of a conspiracy under § 8-3 (1) (D) of the Connecticut Code of Evidence, and admitted them as further evidence of the conspiracy between Depina and the defendant.

B

Depina's Statements to Rasuk and Angelo

Turning next to Depina's statements to Rasuk and Angelo, the defendant relies on *Crawford* v. *Washington*, supra, 541 U.S. 36, to support her argument that admission of these statements violated her right to confrontation under the sixth amendment to the United States constitution. The defendant also claims that the court abused its discretion by admitting the statements as dual inculpatory statements. The state's response is threefold: that the defendant waived any *Crawford* claim at trial; that, even if *Crawford* was not waived, the statements were not testimonial and, thus, their admission into evidence was not proscribed by *Crawford*; and, finally, even if the court incorrectly admitted Depina's statements to Rasuk and Angelo, the court's error was harmless beyond a reasonable doubt in light of the strength of the properly admitted evidence of the conspiracy.

The following additional facts and procedural history are relevant to this portion of our opinion. The state called Angelo to testify about statements that Depina made to her and Rasuk. At the time of her testimony, Angelo had been a Bridgeport police officer for thirteen years. On December 19, 2010, Angelo was at the home of Rasuk, a friend and fellow Bridgeport police officer. Rasuk is also the defendant's sister-in-law. Rasuk was hosting a reception at her home following a memorial service for the defendant's husband, who had died a couple of days prior. Depina was present at the memorial reception, and at one point during the evening asked to speak to Rasuk in private. Angelo was present during the conversation, along with Depina's girlfriend, Carla Silva. Depina stated that he wanted to speak to the group "with regards to the Monroe residence being set on fire by [the defendant]." He told the group that the defendant was responsible for setting the house on fire, and made statements regarding his communications with the defendant before and after the morning of the fire.

Depina explained that several days prior to the fire, numerous items were removed from the defendant's

home. These items included jewelry, furniture, family pictures, and other personal items. Depina stated that he was present while the items were being removed and videotaped the items being removed. Additionally, he stated that prior to the fire, he warned the defendant against setting the fire. He also told the group that on the morning of the fire, the defendant called him and stated that "it was done," meaning that the fire had been set. Depina detailed that the defendant had "lit a match in the stove and also she had lit a sheet in the chimney."

While speaking to the group, Depina stated that he wanted to see the defendant's husband get the insurance money from the fire. He also explained "that if he had to, he would go to the police. And that if he had to go to jail, he would go to jail . . . ." Finally, Depina stated "just to leave his girlfriend [Silva] out of everything."

Prior to Angelo's testimony in front of the jury, the court heard arguments on the admissibility of Depina's statements to Rasuk and Angelo. The state argued that Depina's statements should be admitted as dual inculpatory statements under § 8-6 (4) of the Connecticut Code of Evidence. Defense counsel responded that Depina's statements were not admissible as dual inculpatory statements because they were not against Depina's penal interest and did not meet the second prong of *Ohio* v. *Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), overruled in part on other grounds by *Crawford* v. *Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).[2] In fact, defense counsel stated that "[t]his is not a *Crawford* issue."[3] The court determined that Depina's statements to Rasuk and Angelo were admissible as dual inculpatory statements, and that admission of the statements satisfied the second prong of *Roberts*.

Before discussing the state's claim that the defendant waived reliance on *Crawford* v. *Washington*, supra, 541 U.S. 36, we turn to the question of whether Depina's statements to Rasuk and Angelo reasonably can be characterized as inculpating both himself and the defendant pursuant to § 8-6 (4) of the Connecticut Code of Evidence. "To the extent a trial court's admission of evidence is based on an interpretation of the [Connecticut] Code of Evidence, our standard of review is plenary." (Internal quotation marks omitted.) *State* v. *Miller*, supra, 121 Conn. App. 780.

"Section 8-6 (4) of the Connecticut Code of Evidence creates an exception to the hearsay rule for an out-of-court statement made by an unavailable declarant if that statement was trustworthy and, at the time of its making, so far tended to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. . . . That section further

instructs that, [i]n determining the trustworthiness of a statement against penal interest, the court shall consider (A) the time the statement was made and the person to whom the statement was made, (B) the existence of corroborating evidence in the case, and (C) the extent to which the statement was against the declarant's penal interest. . . . Additionally, this court has held that, it is not necessary that the trial court find that all of the factors support the trustworthiness of the statement. The trial court should consider all of the factors and determine whether the totality of the circumstances supports the trustworthiness of the statement." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Camacho*, supra, 282 Conn. 358–59.

"A dual inculpatory statement is a statement that inculpates both the declarant and a third party, in this case the defendant. . . . We evaluate dual inculpatory statements using the same criteria we use for statements against penal interest. . . . Whether a statement is against a declarant's penal interests is an objective inquiry of law, rather than a subjective analysis of the declarant's personal legal knowledge. Under § 8-6 (4) [of the Connecticut Code of Evidence], we must evaluate the statements according to a reasonable person standard, not according to an inquiry into the declarant's personal knowledge or state of mind." (Citations omitted; internal quotation marks omitted.) Id., 359.

Our Supreme Court's decision in *Camacho* informs our analysis of this issue. In *Camacho*, the trial court admitted the testimony of two witnesses (Martin and Fusco), who testified regarding statements that the defendant's coconspirator (Henry) made to them. Id., 341. Henry detailed to Martin and Fusco, on separate occasions, that he and the defendant went to the residence of one of the victims (Votino) to collect a drug debt. Id., 345. When another person in the home taunted the defendant, the defendant shot that person and Votino. Id. Henry then instructed the defendant to shoot the final two victims so no one could identify him and the defendant. Id.

On appeal, the defendant argued that the trial court improperly concluded that Henry's statements fell within the exception for dual inculpatory statements under the Code of Evidence.[4] Id., 358. Our Supreme Court disagreed and concluded that "Henry's statements to Fusco were not blame-shifting because they exposed him to potential liability for the same crimes with which the defendant is now charged, thereby implicating both himself and the defendant equally." (Footnote omitted.) Id., 360. The court further noted that "Henry understood the legal implications of his statements." Id. For example, while speaking to Martin, Henry stated "that [Martin] could put him in the electric chair," and "repeatedly warned [Martin] not to talk to

the police and questioned whether he could trust her . . . ." Id., 360–61. The court concluded that these statements "indicat[e] that [Henry] reasonably understood that his statements were against his penal interest." Id., 361.[5]

Here, Depina's statements to Rasuk and Angelo follow a line similar to Henry's statements to Martin and Fusco. Depina asked Rasuk if he could speak to her in private, away from the other guests who were attending the memorial reception for the defendant's husband. Rasuk, Angelo, Silva, and Depina then gathered in the hallway of Rasuk's home, away from the other guests. Depina stated that the defendant was responsible for setting her house on fire and detailed how the defendant set the fire that destroyed her home. Depina explained that he knew this information because he was in contact with the defendant on the day of, as well as the days prior to, the fire. He also explained that he was present while items were being removed from the defendant's home prior to the fire and that there was a video of the items being removed. Regarding the consequence of his admissions, Depina stated "that he knew that what he was telling [the group] would possibly have him arrested, and that he . . . doesn't care, he would go to the police [and] if he had to be arrested, he would be arrested." Depina also stated that "if he had to go to jail, he would go to jail," and "to keep his girlfriend out of this, and that if he had to go to the police, he would go to the police."

The foregoing demonstrate that Depina "reasonably understood that his statements" to Rasuk and Angelo "were against his penal interest." *State* v. *Camacho*, supra, 282 Conn. 361. Depina similarly understood the legal implications of his statements, as he indicated that he knew his statements could result in his being arrested, and that, if necessary, he would go to the police and go to jail. Like Henry's statements in *Camacho*, Depina's statements here were not blame-shifting, as the statements exposed him to liability for the same crimes for which the defendant was charged.[6] See id., 360–61.

It is undisputed that Depina was unavailable to testify at the defendant's trial, as he would have invoked his fifth amendment right against self-incrimination if called to testify. Additionally, Depina's statements to Rasuk and Angelo present sufficient indicia of reliability. As noted in the preceding paragraphs, Depina asked to speak to Rasuk and Angelo in private. Depina made this request during a memorial reception that Rasuk was hosting following the death of the defendant's husband. The statements were against Depina's penal interest as they implicated Depina in the conspiracy to commit insurance fraud. Although the statements were made three years after the fire, taking all the relevant factors into consideration, we conclude that the court properly

characterized Depina's statements to Rasuk and Angelo as dual inculpatory statements under § 8-6 (4) of the Connecticut Code of Evidence. See *State* v. *Smith*, supra, 289 Conn. 631–32.

We acknowledge that whether counsel's statement that "[t]his is not a *Crawford* issue" waived the defendant's claim under *Crawford* presents a close question. If counsel's statement did not waive the *Crawford* claim, whether Depina's statements to Rasuk and Angelo were testimonial for *Crawford* purposes presents another close question of law. As to waiver, it is apparent that the court was mindful, before trial, of the potential *Crawford* implications surrounding Depina's statements to Rasuk and Angelo; see footnote 3 of this opinion; but at trial, counsel expressly disclaimed *Crawford* on this issue. We are also mindful, too, that decisional law regarding the contours of waiver is evolving.[7]

Regarding whether Depina's statements were testimonial, it is apparent from the record that Depina perceived that his statements to the police officers could subsequently be used against him. Reciprocally, it is evident that the officers did not interrogate Depina or otherwise question him in any way, behavior that *Crawford* expressly found rendered a person's statements testimonial.

From the record, however, it is abundantly clear that whether or not the court erroneously admitted evidence of this conversation between Depina and the Bridgeport police officers as dual inculpatory statements, there was an abundance of admissible evidence adduced at trial to render this mistake, if any, harmless beyond a reasonable doubt.[8] For example, the jury heard evidence about the defendant's deteriorating financial situation. Specifically, there was evidence that the defendant and her husband were late making payments to creditors, they had state and federal tax liens of nearly $145,000 filed against their home, they could not pay for necessities such as home heating oil, and the defendant's husband's business was failing because of his opioid addiction. This evidence provided a strong motive for the defendant to burn down her house to obtain the insurance proceeds.

Moreover, the jury heard that the defendant contacted her insurance carrier days before the fire to inquire about whether her homeowner's insurance policy was still active. Additionally, Corry testified that "after ruling all of [the] other potential sources of ignition out, that this was an intentionally set fire." Corry also testified that the defendant claimed she had valuable jewelry in her bedroom, but that after an extensive search of the bedroom, he never located the valuable jewelry. From this evidence, the jury could infer that the valuable jewelry was removed from the home prior to the fire.

The state presented the transcript of the defendant's interview with Corry, as well as a recording of Depina's interview with Corry and Depina's deposition testimony. In these exhibits, the defendant and Depina detailed their activities on the morning of the fire. The state then presented cell site location information evidence, which contradicted the times and locations that the defendant and Depina told Corry and the police. The state used this evidence of a false interlocking alibi to establish the existence of a conspiracy between the defendant and Depina. Taken together, the substantial amount of admissible evidence supporting the defendant's conviction renders any mistake by the trial court, if any, harmless beyond a reasonable doubt. Accordingly, the defendant's first claim on appeal fails.

## II

The defendant's second claim on appeal is that the state's use of cell site location information to convict her violated her rights under article first, § 7, of the constitution of Connecticut.[9] Although the defendant did not raise this claim at trial, she argues that review of the claim is appropriate under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). The state maintains that the record is inadequate for review of this claim, and that if reviewed, the defendant has not shown state action to establish a violation under article first, § 7. We agree with the state.

The following additional facts and procedural history are relevant to the defendant's second claim. On February 4, 2015, the state presented the testimony of Ryan Harger, a representative of Sprint Corporation (Sprint). The defendant and her husband were customers of Sprint. The state, through Harger, introduced the defendant's Sprint phone records (records) from January, 2008. Harger explained that Sprint often receives court orders or subpoenas from law enforcement agencies ordering Sprint to produce phone records. Although Harger stated that Sprint produced the defendant's records pursuant to a subpoena, he did not testify from what agency Sprint received the subpoena.

The state then called Deputy United States Marshal James Masterson. Masterson testified that he had reviewed the records from the morning of the fire and analyzed the defendant's movements on that morning. Masterson explained that, even though the defendant stated that she left her house at approximately 9 a.m. on the morning of the fire, she made a phone call to Depina at 9:36:14 a.m. that began and ended on the same cell towers as the defendant's previous calls from home. Additionally, the defendant received a phone call from her security system with ADT Security Services, Inc., at 9:39:47 a.m., which also began and ended on the same towers as the defendant's previous calls from

home. It was not until the defendant received a phone call at approximately 9:50 a.m. that her phone accessed a cell tower other than the ones typically accessed when the defendant made a call from home.

Moreover, Masterson opined that, by 9:56 a.m. on the morning of the fire, the defendant's phone had not arrived in Ansonia or connected to any cell tower in Ansonia. He testified that at 10:45 a.m., the defendant received a phone call that connected to a cell tower near Depina's home. Masterson explained that, at 10:52 a.m., the defendant received a phone call that connected to a cell tower near Griffin Hospital. At about 11:22 a.m., the defendant's phone accessed a cell tower typically accessed from the defendant's home.

The defendant argues that the court improperly admitted the cell site location information evidence that the state presented because admission of the cell site location information violated her rights under article first, § 7, of the constitution of Connecticut. We disagree.

"[I]f an [evidentiary] impropriety is of constitutional proportions, the state bears the burden of proving that the error was harmless beyond a reasonable doubt. . . . We recognize, of course, that a violation of constitutional magnitude may be established even though there has not been a complete abridgement or deprivation of the right. A constitutional violation may result, therefore, when a constitutional right has been impermissibly burdened or impaired by virtue of state action that unnecessarily chills or penalizes the free exercise of the right." (Citation omitted; internal quotation marks omitted.) *State* v. *Johnson*, 171 Conn. App. 328, 348, 157 A.3d 120, cert. denied, 325 Conn. 911, 158 A.3d 322 (2017).

Key to our analysis is whether the action under review is state action, which includes action directly by the state as well as action by a private actor at the behest of the state. See, e.g., *State* v. *Colvin*, 241 Conn. 650, 657, 697 A.2d 1122 (1997) ("[t]he initial determination is, therefore, whether the challenged evidence is in some sense the product of illegal government activity" [internal quotation marks omitted]); see also *State* v. *Betts*, 286 Conn. 88, 96, 942 A.2d 364 (2008) ("[a] private citizen's actions may be considered state action, however, if he acts as an instrument or agent of the state" [internal quotation marks omitted]). Thus, in order for the defendant to prevail on this issue, she must, as a preliminary matter, point to trial evidence that the state or an entity acting on behalf of the state obtained the phone records from Sprint. The trial record, however, is silent in that regard.

"The defendant bears the responsibility for providing a record that is adequate for review of his claim of constitutional error. If the facts revealed by the record

are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim. . . . The defendant also bears the responsibility of demonstrating that his claim is indeed a violation of a fundamental constitutional right. Patently nonconstitutional claims that are unpreserved at trial do not warrant special consideration simply because they bear a constitutional label." (Citations omitted.) *State* v. *Golding*, supra, 213 Conn. 240.

On the basis of our review of the record, it is unclear from whom Sprint received the subpoena to produce the defendant's phone records. The defendant did not produce any evidence establishing the source of the subpoena that ordered Sprint to produce her phone records. Because the defendant cannot establish that the production of the records was the result of state action, the defendant cannot, therefore, establish that the claimed violation of article first, § 7, of the constitution of Connecticut resulted from state action. We conclude that the record is inadequate to review, and, accordingly, the defendant's second claim on appeal fails.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] At a hearing prior to the start of evidence, the state explained, with respect to Depina's statements to Corry and deposition testimony that "[t]he state is offering those statements as verbal acts, verbal deeds, the fact that those statements were given, not that they're necessarily true because obviously the state's position is, is the fact that they're not true, but they are part of [the] concept of the interlocking false alibi."

[2] The second prong of *Roberts* requires that a statement bear "adequate 'indicia of reliability.'" *Ohio* v. *Roberts*, supra, 448 U.S. 66.

[3] To give context to defense counsel's statement, we highlight portions from an on-the-record hearing that occurred the day prior to the start of evidence. Our review of this colloquy makes clear that the court was concerned about a potential *Crawford* issue regarding Depina's statements and alerted both the state and defense counsel to its concern. For example, while discussing the admissibility of Depina's statements, the court stated that "the court has a *Crawford* issue here; that's what I'm trying to figure out, which way we go with this." Shortly thereafter, the court noted, "I think the court has to conduct a *Crawford* analysis in light of all of these facts and circumstances . . . . I think *Crawford* is in the case, but whether or not I find that it does not apply to—to these statements, that's a different issue." Additionally, the court directed defense counsel's attention to *Crawford* when it stated:

"The Court: [Y]ou don't cite *Crawford* by name, [counsel], but you do, in your motion, clearly in the first paragraph, [d]o talk about her rights of confrontation and due process under the fifth, sixth and fourteenth [a]mendment.

"[Defense Counsel]: Right.

"The Court: It's implicated.

"[Defense Counsel]: It is. And I just see a potential can of worms being opened here if the state is allowed to bring in witnesses, and let's say Mr. Depina has a different view of the conversation that took place, and he's claiming the fifth [amendment], and I can't call him; I think then we're running into some problems. But again, it's all fact dependent."

[4] In *Camacho*, the defendant also argued that admission of Fusco's testimony violated the confrontation clause of the sixth amendment to the United States constitution; our Supreme Court rejected that argument. *State* v. *Camacho*, supra, 282 Conn. 351.

[5] The Supreme Court noted that "[a]lthough Henry made these statements to Martin, not Fusco, because he told both women essentially the same story, it is clear that he understood the legal ramifications of both statements." *State* v. *Camacho*, supra, 282 Conn. 361.

[6] In fact, Depina was charged with acting as the defendant's coconspirator. See *State* v. *Azevedo*, Superior Court, judicial district of Fairfield, Docket No. CR-13-270435T, 2015 WL 5626280, *2 (August 21, 2015).

[7] See, e.g., *State* v. *Davis*, 311 Conn. 468, 485, 88 A.3d 445 (2014) (*Palmer*, *J.*, concurring) ("If the majority now has second thoughts about . . . [*State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 947 (2011)]—as it should . . . then the majority should say so. . . . I continue to believe that our decision in *Kitchens* was manifestly incorrect."); *State* v. *Bellamy*, 323 Conn. 400, 454, 147 A.3d 655 (2016) (*Rogers*, *C. J.*, concurring) ("I agree with the defendant . . . that this court's marked expansion of the doctrine of implied waiver of claims of jury instructional error in . . . *Kitchens* . . . was mistaken and, therefore, I would overrule that decision and return to the much narrower conception of implied waiver that previously governed our jurisprudence in this area"); id., 470 (*Palmer*, *J.*, concurring in the judgment) ("[T]he court [in *Kitchens*] concluded that, for various reasons of public policy, it is desirable and appropriate to treat such challenges as waived and unreviewable on appeal. . . . Both of these conclusions are indefensible." [Citation omitted.]).

[8] In deciding this case based on harmlessness, we have not concluded that the trial court abused its discretion in admitting Depina's statements to Rasuk and Angelo. The question of whether these statements are testimonial is a very close call, as is the question of whether defense counsel's statement that "[t]his is not a *Crawford* issue" constituted a waiver of the defendant's right to claim a confrontation clause violation under *Crawford*. Additionally, it appears from the record that defense counsel's argument steered the court away from *Crawford*. Under these circumstances, and because the contours of waiver are the subject of a continuing discussion in our Supreme Court; see footnote 7 of this opinion; considerations of judicial efficiency and fundamental fairness warrant assessing this issue on the basis of harmless error analysis.

We note that we are disposing of this claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). The defendant here has failed to satisfy the fourth prong of *Golding*, which requires that the state fail to demonstrate the harmlessness of an alleged constitutional violation beyond a reasonable doubt. See id., 240. In *Golding*, the court explained that "[when] the state is able to demonstrate the harmlessness of such alleged violation beyond a reasonable doubt . . . it would be a waste of judicial resources, and a pedantic exercise, to delve deeply into the constitutional merits of a claim that can appropriately be resolved in accordance with the relevant harmless error analysis." (Citations omitted.) Id., 241–42. Here, given the amount of independent, admissible evidence of the defendant's guilt, we decline to "delve deeply into the constitutional merits"; id. 242; of the defendant's claim, and resolve this issue through harmless error analysis.

[9] Article first, § 7, of the Connecticut constitution provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."